ROY LEE HEAVNER AND REBECCA HEAVNER, PLAIN-
TIFFS-APPELLANTS, v. UNIROYAL, INC., A CORPORA-
TION OF THE STATE OF NEW JERSEY, AND PULLMAN,
INC., A CORPORATION OF THE STATE OF DELAWARE,
DEFENDANTS-RESPONDENTS.

Argued September 25, 1972—Decided June 5, 1973.

*Mr. William J. Cook* argued the cause for plaintiffs-appellants (*Messrs. Brown, Connery, Kulp, Wille, Purnell & Greene,* attorneys).

*Mr. Joseph H. Kenney* argued the cause for defendant-respondent Uniroyal, Inc. (*Messrs. Archer, Greiner & Read,* attorneys; *Mr. Charles Lee Harp, Jr.,* on the brief).

*Mr. Carl J. Kisselman* argued the cause for defendant-respondent Pullman, Inc. (*Messrs. Kisselman, Deighan, Montano, King & Summers,* attorneys; *Mr. Arthur Montano, of counsel; Mr. Douglas A. Faulkner,* on the brief).

The opinion of the Court was delivered by

HALL, J. This product liability case presents two important questions concerning the statute of limitations. The first, a choice-of-law question, is whether New Jersey, as the forum state, should apply its limitations statute or that of North Carolina — the state where all the parties are and where the cause of action arose and all preceding incidents occurred. The second question is whether, in any product liability case in this state in which our limitations law is applicable, the appropriate period is governed by our general statutes of limitations or is four years after the tender of delivery of the defective product as provided in the sales chapter of the Uniform Commercial Code, *N. J. S. A.* 12A:2–725.

In the complaint plaintiff Roy Heavner, the purchaser of a truck tire from defendant Pullman which had been manufactured by defendant Uniroyal, sought recovery from both for personal injuries to himself and contemporaneous damage to his vehicle. His wife, plaintiff Rebecca Heavner, sought a *per quod* recovery for loss of consortium. All three claims were alleged to have resulted from a defect in the tire, which blew out while Heavner was driving the rig, causing it to crash into an abutment. Each was stated, in separate counts, on the theories of negligence, breach of express and implied warranty, strict liability in tort and strict liability for misrepresentation as to quality by advertising and otherwise.

Defendants moved in the Law Division before answer filed to dismiss the personal injury and *per quod* counts on the ground that our two-year personal injury statute of limitations (*N. J. S. A.* 2A:14–2) applied rather than the Uniform Commercial Code four-year provision and that, on the face of the complaint, action thereon was consequently barred. *R.* 4:6–2(e).[1] The motion was granted[2] and the Appellate Division affirmed on the same basis. 118 *N. J. Super.* 116 (1972). We granted certification on plaintiffs' petition. 60 *N. J.* 317 (1972).

The facts pertinent to the questions before us are necessarily taken from the complaint and assumed to be true. Plaintiffs were at the time of the accident, and have been

---

[1] The thesis of the motion was that New Jersey limitations law applied. The choice-of-law question did not appear in the case until oral argument before us, when it was raised both by the court and counsel for Uniroyal. Supplemental memoranda thereon have since been furnished.

[2] The trial court directed the entry of final judgment on these counts, pursuant to *R.* 4:42–2, thereby making the action immediately appealable as of right despite the fact that the property damage counts remain.

since, residents of North Carolina. Defendant Uniroyal is a New Jersey corporation engaged in the manufacture, sale and distribution of truck tires throughout the United States. Defendant Pullman, a Delaware corporation, is a retailer of trailers equipped with Uniroyal truck tires, likewise doing business throughout the nation.

On October 21, 1966, plaintiff Roy Heavner purchased a truck trailer, having the Uniroyal tire in question mounted on one of its wheels, from Pullman in Charlotte, North Carolina. Presumably the vehicle was registered there. The accident occurred on April 17, 1967 in that state. No suit has ever been instituted in North Carolina. There is agreement that jurisdiction could have been obtained over both defendants in that state and no explanation has been offered why a timely action was not begun there. The present suit was started here on September 25, 1970 — more than three years after the accident, but less than four years from the delivery of the tire by Pullman to Heavner.

We take it to be conceded that, at the time of commencement of this suit, the applicable North Carolina statute of limitations had expired and any action was barred in that state. The limitations period there for actions for tortious injuries to the person or chattels and upon contract at the times here involved was three years from the accrual of the cause of action, the latest possible date for which would be the date of the accident. *General Statutes of North Carolina* §§ 1–15(a), 1–52(1), (4) and (5). The Uniform Commercial Code did not become effective in that state until July 1, 1967. (The four-year limitation section specifically provides, 2–725(4), that it shall not apply to causes of action which have accrued before the act becomes effective.) 1 *U. L. A.-U. C. C.* (master edition), p. xxxvii.[3]

---

[3]Plaintiffs have shopped not only for a forum where their suit might not be barred by the statute of limitations, but also where the substantive law would seemingly be more favorable than that of North Carolina. The latter is borne out by the complaint's demand

I

*Choice of Law as to the Statute of Limitations*[4]

It has long been the common law conflicts rule that the statute of limitations is ordinarily a matter of procedure, affecting the remedy and not the right, and is therefore, like other procedural attributes, controlled by the law of the forum rather than that of the state whose law otherwise governs the cause of action. *Restatement, Conflict of Laws* §§ 603, 604 (1934); *Restatement, Conflict of Laws 2d* § 142 (1971); *Leflar, American Conflicts Law* § 127 (1968); *Goodrich, Conflicts of Laws* § 85 (4th ed. 1964). New Jersey has consistently followed the rule, although not without some recent criticism. *Marshall v. Geo. M. Brewster & Son, Inc.*, 37 *N. J.* 176, 180–181 (1962). It is, of course, judge-made and may be changed judicially, as we have done with respect to the matter of the substantive law to be applied to a foreign cause of action. *See Mellk v. Sarahson,*

for judgment seeking damages "in accordance with the laws of the State of New Jersey." We gather that it is quite doubtful whether North Carolina law, at the time of the accident, recognized strict liability in tort to the extent New Jersey does since *Henningsen v. Bloomfield Motors, Inc.*, 32 *N. J.* 358 (1960), and its progeny, or allowed a cause of action to a wife for loss of consortium. We may add that we do not believe that New Jersey has any sufficient interest in this action to call for the application of its substantive law in preference to that of North Carolina under the governmental interest choice-of-law principles laid down in *Mellk v. Sarahson*, 49 *N. J.* 226 (1967), and *Pfau v. Trent Aluminum Co.*, 55 *N. J.* 511 (1970). Our only possible interest is that Uniroyal, a national company, is incorporated here and that is not enough. *Cf. Gore v. United States Steel Corp.*, 15 *N. J.* 301, 312 (1954), *cert.* den. 348 *U. S.* 861, 99 *L. Ed.* 678, 75 S. Ct. 84 (1954). All other interests are North Carolina's. Quite apart from choice-of-law considerations, it seems obvious that trial of the case would be much more convenient in North Carolina than in New Jersey. *See Gore v. United States Steel Corp., supra; Semanishin v. Metropolitan Life Insurance Co.*, 46 *N. J.* 531 (1966).

[4]The discussion under this heading is based upon our view that New Jersey would apply North Carolina substantive law to the cause of action. *See* footnote (3).

49 *N. J.* 226 (1967); *Pfau v. Trent Aluminum Co.,* 55 *N. J.* 511 (1970). We think reexamination of the rule is in order.

Sound sense and practical reasons dictate that a suit on a foreign cause of action should be processed and tried according to the procedural rules of the forum state. It would be an impossible task for the court of such a state to conform to procedural methods and diversities of the state whose substantive law is to be applied. The determination of that law is a difficult enough burden to impose upon a foreign tribunal.

A statute of limitations is, however, not subject to the same problems as strictly procedural matters. The limitation period of the foreign state can generally be ascertained even more easily and certainly than foreign substantive law. It came to be included in the category of procedure on the theory that the passage of the period destroys only the remedy and not the right and remedy is considered procedural and governed by the law of the forum. Historically, the thesis developed in England more than two centuries ago when English common law judges restricted as much as possible all reference to or reliance upon the law of foreign countries. *Goodrich, supra,* p. 152. In any event, the rule fitted very neatly into basic principles of early conflicts law which rather arbitrarily compartmentalized the incidents found in a foreign cause of action into fixed characteristics and mechanical rules in the supposed interests of uniformity and certainty, almost regardless of the justice or good sense of the particular situation — an approach recently abandoned in this and many other states, at least with respect to the substantive law to be applied. *See Restatement, Conflict of Laws 2d* §§ 145, 146.

This law-of-the forum rule as to the applicable period of limitations has been almost universally criticized by legal commentators, especially in recent times when the whole field of conflicts law has been undergoing so much reevaluation by both scholars and American courts. The following is a partial catalog: *Leflar, supra,* § 127 (1968); *Goodrich,*

*supra,* § 85 (4th ed. 1964); Lorenzen, The Statute of Limitations and the Conflict of Laws, 28 *Yale L. J.* 492 (1919); Vernon, Statutes of Limitation in the Conflict of Laws: Borrowing Statutes, 32 *Rocky Mt. L. Rev.* 287, 288–293 (1960); McDonald, Limitation of Actions — Conflict of Laws — *Lex Fori or Lex Loci,* 35 *Texas L. Rev.* 95, 100–107 (1956); Sedler, The Erie Outcome Test as a Guide to Substance and Procedure in the Conflict of Laws, 37 *N. Y. U. L. Rev.* 813, 846–851 (1962); Ester, Borrowing Statutes of Limitation and Conflict of Laws, 15 *U. Fla. L. Rev.* 33, 36–39 (1962).

The fundamental illogic and unsoundness of the rule are well set forth in selected excerpts from these writings. Goodrich says:

There is little reason for this rule, other than historical * * *. As an original proposition, it could well be urged that, after suit is barred by the law to which reference is made as governing the claims of the parties, the plaintiff's claim, now deprived of its most valuable attribute, should be unenforceable by action elsewhere. * * * (at pp. 152–153)

Dean Leflar puts it this way:

* * * The historical explanation of these results is a theory that the passage of the period of limitations destroys only the remedy and not the right inherent in a cause of action. Remedy, classified as a procedural matter, is governed by forum law. This theory, as applied to causes of action barred where they arose, does not make very good sense. A right for which the legal remedy is barred is not much of a right. It would have made better logic if the limitations rule of the state whose substantive law is chosen to govern the right were deemed substantive also, so that both the original and the terminal existence of the right would be related to the same body of law. That, however, was not the way the law developed, save for exceptional situations to be mentioned later. The result is that plaintiffs whose claims are barred by the governing substantive law are allowed to shop around for a jurisdiction in which the statute is longer, in the hope of getting service there on the obligor. (at p. 304)

Professor Lorenzen made one of the first criticisms almost 55 years ago:

> There is no reason, as regards statutes of limitation, either, why the internal test, which classifies them as procedural or as relating to the remedy, should be carried over into the conflict of laws. A right which can be enforced no longer by an action at law is shorn of its most valuable attribute. After the enforcement of the right of action is gone under the law governing the rights of the parties, it would seem clear upon principle that the same consequences should attach to the operative facts everywhere. Nor is there any policy pointing to a different conclusion. It follows that no court should enforce a foreign cause of action which is barred by the law governing the substantive rights of the parties. The fact that either the internal law of the forum or the internal law of the foreign state or the internal law of both states may regard statutes of limitation as relating to the remedy is therefore immaterial. * * * (28 *Yale L. J.* at pp. 496–497)

(He also urged that where the forum's limitation period is shorter than that of the *lex loci,* the latter should be applied, an aspect we need not pass upon here.)

Professor Sedler finds Lorenzen's criticism to be unanswerable. He observed: "It has never been satisfactorily shown why a suit should be permitted if it cannot be maintained under the law to which the forum looks as a model." (37 *N. Y. U. L. Rev.* at p. 847)

Professor Vernon adds another consideration against the rule:

> By granting relief which would not be available in the place of accrual, or in some other jurisdiction having intimate contact with the transaction or the parties, the forum is applying dual standards to the claim being presented. Whenever considerations call for the application of the contract, tort or other "substantive" law of a foreign jurisdiction, it would appear that its time bar should also be recognized. No special considerations of local policy are presented by the recognition of a foreign statutory bar. * * * (32 *Rocky Mt. L. Rev.* at p. 291.)

Courts have been indeed slow to follow the scholarly lead and candidly change the rule. Only a small handful of cases appear to have considered the possibility. In one, the United States District Court in New Hampshire suggested such a result as an alternative ground of decision. *Seymour v. Parke, Davis & Company,* 294 *F. Supp.* 1257

(D. N. H. 1969). The suit was by a Massachusetts resident against a Michigan corporation for wrongful death resulting from a drug manufactured by the defendant, who was served under New Hampshire's long-arm procedure. All incidents took place in Massachusetts and the suit was concededly brought in New Hampshire to attempt to secure the advantage of its longer statute of limitations. The court found that New Hampshire had no interest whatever in the litigation and held that in these circumstances it could not constitutionally acquire jurisdiction over the defendant. The judge went on to say, alternatively, that he would probably apply the Massachusetts statute of limitation on the theory that New Hampshire law would require it by reason of that state's abandonment of the old *lex loci delicti* rule for determining choice of substantive law in tort cases and adoption of the modern approach. (The Court of Appeals, in affirming the result, made no mention of this alternative ground of decision. 423 *F. 2d* 584 (1 Cir. 1970).) In another case, Judge Freedman, in a dissenting opinion, expressed the feeling that there is no reason not to extend the modern conflicts view as to applicable substantive law to the matter of the statute of limitations as well. *Mack Trucks, Inc. v. Bendix-Westinghouse Auto A. B. Co.,* 372 *F. 2d* 18, 21, 24 (3 Cir. 1966), *cert.* den. 387 *U. S.* 930, 87 *S. Ct.* 2053, 18 *L. Ed. 2d* 992 (1967). And in *Marshall,* Justice Jacobs, although following the rule, commented that considerations of convenience and practicality dictating the forum's choice of its own procedure "would appear to have little pertinency to the bar of limitations" (37 *N. J.* at 180).

General dissatisfaction with the rule has, however, found concrete expression in ways other than by outright judicial change. The first of these is the judge-made principle which has developed that the foreign limitations period will be applicable where a statute creating the cause of action bars the right and not merely the remedy. Wrongful death statutes are a common example. *Restatement, Conflict of Laws 2d* § 143; *Leflar, supra,* at pp. 305–306. Professor Sedler

has characterized this effort in his previously cited article: "The struggles of the courts to determine whether the locus has destroyed the right are amusing, even if the results are inconsistent and the reasoning at times most specious." (37 *N. Y. U. L. Rev.* at p. 848)

The other method which has been utilized to counteract the law-of-the-forum rule is the enactment, by about three-quarters of the states, of so-called "borrowing statutes." Generally these statutes either bar the action if it is barred by the state where the defendant, or both of the parties, resided or of the place where the cause of action arose. *See Restatement, Conflict of Laws 2d,* § 142, comment f; *Leflar, supra,* § 128.[5] In modern days, they serve a purpose of preventing forum shopping. Although undoubtedly intended to be mechanical and certain in operation, these statutes are exceedingly diverse and complex and may well be said to have created more problems than they have solved. *See Vernon, supra* (32 *Rocky Mt. L. Rev.* 287) ; *Ester, supra* (15 *U. Fla. L. Rev.* 33). New Jersey has never had such a statute. But as Professor Sedler points out: "The absence of a borrowing statute should not prevent application of the statute of the locus; for a policy against forum shopping can be set out by the judiciary as well as the legislature." (37 *N. Y. U. L. Rev.* at p. 850)

 We are convinced the time has come, for the reasons previously outlined, to discard the mechanical rule that the limitations law of this state must be employed in every suit

---

[5] Judge Friendly has said that a prime reason for the original adoption of such statutes was to prevent the application of a statute of the forum state tolling an action by reason of the absence of the defendant, which would permit, if the defendant ever comes into the forum state, actions long since barred by the *lex loci* and the statutes of the state where the defendant resided and which would have been barred by the forum had the defendant resided there since the cause of action arose. *George v. Douglas Aircraft Co.*, 332 *F. 2d* 73, 77 (2 Cir. 1964), *cert.* den. 379 *U. S.* 904, 85 *S. Ct.* 193, 13 *L. Ed. 2d* 177 (1964).

on a foreign cause of action. We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state. We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse.[6]

This conclusion alone would dispose of the case at bar, leading to an affirmance of the judgment.[7] However, it is important that the second question stated at the outset of this opinion also be decided and, since our view of it like-

---

[6]*Marshall v. Geo. M. Brewster & Son, Inc., supra* (37 *N. J.* 176), in which the common law rule was applied to hold that New Jersey's longer limitation period controlled, presented a different factual picture than here present. It was a wrongful death action in which the fatal injury occurred in Pennsylvania. While the decedent and his representative were nonresidents of this state, the defendants were New Jersey contractors having their principal places of business in this state. At the time of the injury they were temporarily engaged, as a joint venture, in a railroad improvement project in Pennsylvania in the course of which the injury happppened.

Since this opinion was written the recent case of *Air Products and Chemicals, Inc. v. Fairbanks Morse, Inc., Wis.*, 206 *N. W.* 2d 414 (April 20, 1973), has come to our attention. There the Wisconsin Supreme Court, in determining to apply its statute of limitations, longer than that of the Uniform Commercial Code, to a Pennsylvania cause of action governed by substantive provisions of the Code, reached its conclusion by a consideration of the same criteria applicable to a decision on whether the substantive law of the forum or of the foreign state should control, rather than by mechanically utilizing the rule that the law of the forum governs.

[7]On the holding under this heading, the counts for property damage are also amenable to dismissal since the applicable North Carolina limitation period had expired with respect to them as well.

wise leads to an affirmance, we prefer to decide the case on both bases. We therefore now turn to consideration of that question.

## II

### *The New Jersey Statute of Limitations in Product Liability Cases*

The question here is, even if New Jersey and not North Carolina limitations law applies, whether, in a product liability action brought by a consumer against a manufacturer and a retailer, our general statutes of limitations control, as the courts below held, or whether the appropriate period is that prescribed by the Uniform Commercial Code, *N. J. S. A.* 12A:2–725, with respect to "[a]n action for breach of any contract for sale," as plaintiffs contend.

The general problem of the limitations period for actions against manufacturers, sellers and suppliers for defective products causing the ultimate user or consumer personal injuries or physical damage to property and the effect of the adoption of the Uniform Commercial Code thereon has been considered in other state and federal courts in various contexts with varying and confusing views and results. *See* Alaska, *Sinka v. Northern Commercial Company,* 491 *P. 2d* 116 (Sup. Ct. 1971); Connecticut, *Abate v. Barkers of Wallingford, Inc.,* 27 *Conn. Sup.* 46, 229 *A. 2d* 366 (C. P. 1967); Indiana, *Helvey v. Wabash County REMC,* —— *Ind. App.* ——, 278 *N. E. 2d* 608 (Ct. App. 1972); New York, *Mendel v. Pittsburgh Plate Glass Co.,* 25 *N. Y. 2d* 340, 305 *N. Y. S. 2d* 490, 253 *N E. 2d* 207 (1969); Ohio, *United States Fidelity & Guaranty Co. v. Truck & Concrete Equipment Co.,* 21 *Ohio St. 2d* 244, 257 *N. E. 2d* 380 (1970), *Val Decker Packing Co. v. Corn Products Sales Co.,* 411 *F. 2d* 850 (6th Cir. 1969); Oregon, *Arrow Transportation Co. v. Fruehauf Corp.,* 289 *F. Supp.* 170 (D. Or. 1968); Pennsylvania, *Gardiner v. Philadelphia Gas Works,* 413 *Pa.* 415, 197 *A. 2d* 612 (1964), *Rufo v. Bastian Blessing Company,*

417 *Pa.* 107, 207 *A. 2d* 823 (1965), *Hoffman v. A. B. Chance Co.,* 339 *F. Supp.* 1385 (M. D. Pa. 1972), *Hoffman v. A. B. Chance Co.,* 346 *F. Supp.* 991 (M. D. Pa. 1972); Rhode Island, *International Union of Operating Engineers v. Chrysler Motors Corp.,* 106 *R. I.* 248, 258 *A. 2d* 271 (1969), *Kelly v Ford Motor Company,* —— *R. I.* ——, 290 *A. 2d* 607 (1972); Tennessee, *Layman v. Keller Ladders, Inc.,* 224 *Tenn.* 396, 455 *S. W. 2d* 594 (1970), *Bates v. Shapard,* 224 *Tenn.* 672, 461 *S. W. 2d* 946 (1970), *Hargrove v. Newsome, Tenn.,* 470 *S. W. 2d* 348 (1971), appeal dismissed 405 *U. S.* 907, 92 *S. Ct.* 953, 30 *L. Ed. 2d* 779 (1972); Virginia, *Tyler v. R. R. Street & Co.,* 322 *F. Supp.* 541 (E. D. Va. 1971). *See* generally 2 Frumer & Friedman, *Products Liability* (1971), § 16A[5][g].

The difficulties and lack of uniformity have largely arisen from the language of the sales chapter of the Code, the nature of strict liability in tort, the extent of the parallel case law development thereof in the particular state and the peculiarities of the state's general limitations statutes. In determining for this state the question posed, we are confronted with the same task of evaluating the interplay of these aspects.

New Jersey's general statutes of limitation, of ancient origin, deal separately and differently with injuries to the person as compared with injuries to property and claims on contract. The former, *N. J. S. A.* 2A:14–2, reads as follows:

Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.[8]

---

[8]This section also applies to *per quod claims. Rex v. Hutner,* 26 *N. J.* 489 (1958). If one considers the various counts of the instant complaint separately, there is no doubt that those seeking recovery for personal injuries and *per quod* damages on the theory of negligence would be barred under this section.

The latter, *N. J. S. A.* 2A:14–1, prior to the adoption of the Uniform Commercial Code, read this way:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.[9]

This legislative distinction in limitation periods, as interpreted by our courts prior to the present development of strict liability in tort or the effective date of the Uniform Commercial Code, represented an approach based upon whether the injury was to the person or to property. It was well settled that in an action for personal injuries, the two-year statute, computed from the date of occurrence of the injuries (or in some situations the date of their discovery), would govern, whether the causes of action were pleaded in tort (negligence) or for breach of warranty in connection with a sale of goods or for violation of contract. *Weinstein v. Blanchard,* 109 *N. J. L.* 332, 338–339 (E. & A. 1932), overruled on other grounds in *Fernandi v. Strully,* 35 *N. J.* 434, 450 (1961); *Burns v. Bethlehem Steel Co.,* 20 *N. J.* 37 (1955); *Raskin v. Shulton, Inc.,* 92 *N. J. Super.* 315 (App. Div. 1966); *Oroz v. American President Lines,* 259 *F. 2d* 636, 639 (2 Cir. 1958) (applying New Jersey law), *cert.* den. 359 *U. S.* 908, 79 *S. Ct.* 584, 3 *L. Ed. 2d* 572 (1959). When the action was for consequential property damage (or for loss of the bargain) by reason of breach of

---

9Consequently if a motor vehicle owner is injured and his vehicle damaged in the same accident by reason of the negligence of another, two differing periods of limitation apply, the shorter to an action for the personal injuries and the longer for physical damage to the car.

warranty made in connection with a sale of goods, the six-year statute applied, commencing to run from the delivery of the product by the seller to the buyer. *Cf. The E. O. Painter Fertilizer Co. v. The Kil-Tone Co.*, 105 *N. J. L.* 109 (E. & A. 1928). We had taken the clear position, as distinct from the view held in some other states (*see e. g. Sohn v. Bernstein,* —— *Me.* ——, 279 *A. 2d* 529, 533–534 (1971)), that the period within which a suit must be brought was not to turn on what form of action was pleaded, but rather on the nature of the damage. It may be added that actions sounding in breach of warranty had become the accepted form of action by a consumer-purchaser, who alone could sue, against his immediate seller, who alone could be sued, by reason of the privity requirement, for consequential personal injuries and physical harm to goods, because of a defect in them or in their design, in view of the practical difficulty of proving any negligence against the manufacturer or the retailer. *See, e. g., Marko v. Sears, Roebuck and Co.,* 24 *N. J. Super.* 295 (App. Div. 1953).

The Uniform Commercial Code was adopted in this state by *L.* 1961, *c.* 120, to become effective January 1, 1963. The following limitation of actions provision is found in the sales chapter, *N. J. S. A.* 12A:2–725, giving rise to the question before us:

(1) An action for breach of any *contract for sale* must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. (Emphasis supplied).

\* \* \* \* \* \* \* \*

■ ■ Amendments made, and not made, to our general statutes of limitations on the same day are of the utmost

significance. By *L.* 1961, *c.* 121, the Legislature amended the property injury and contract claim section, *N. J. S. A.* 2A:14–1, by adding this sentence: "This section shall not apply to any action for breach of any contract for sale governed by .section 12A:2–725 of the New Jersey Statutes."[10] *N. J. S. A.* 2A:14–2 — the two-year limitation on actions for injuries to the person — was *not* amended. We take this to be, as did the Appellate Division herein (118 *N. J. Super.* at 120), a clear indication of legislative intent that the personal injury-property damage dichotomy in our limitation statutes is to be .retained and that the adoption of section 12A:2–725 of the Code is not to be construed as applying to personal injury actions arising out of breach of a "contract for sale."[11] In other words, the four-year provision of section 2–725 is to apply only to non-personal injury claims otherwise within the scope of the chapter. On this basis alone we consider the decision of the Appellate Division to be correct, even assuming the action at bar against both manufacturer and retailer can properly be considered as one for breach of a "contract for sale" within the intendment of that section. But there are other deeper considerations which dictate the same conclusion.

The pioneering case of *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358 (1960), was decided a year and a half before the Uniform Commercial Code was adopted in this state. The suit there was by the wife of the purchaser of an automobile against the manufacturer and retail dealer for personal injuries resulting from an accident due to a defect in the steering mechanism and by her husband against the same defendants for *per quod* damages and physical

---

[10]The same sentence was added to *N. J. S. A.* 2A:14–4 and –28 specially governing limitation of actions on contracts under seal and on the right to commence a new action within a specified period after reversal of a judgment in favor of a plaintiff.

[11]A trial court had previously held to the same effect. *Garfield v. Furniture Fair-Hanover,* 113 *N. J. Super.* 509 (Law Div. 1971).

harm to the vehicle. Both plaintiffs were allowed to recover against both defendants on all the respective claims. Lack of privity between the wife and both defendants and between the husband and the manufacturer was found to be no bar and disclaimer and limitation of liability clauses were held to be void as against public policy. While this first breakthrough in the law of manufacturer and retailer liability to consumer-users for personal injuries and physical harm to the chattel by reason of a defect therein when it left the manufacturer's hands was couched in the language of an implied warranty of merchantability or fitness for use, it is plain from the rationale of the comprehensive opinion of Justice Francis that we were in fact speaking of a new concept of tortious wrong — liability, without proof of fault, for personal injuries and physical harm to property of consumers and users by manufacturers and retailers who put defective articles in the stream of commerce — and were not speaking of the concept of consequential damages arising out of the breach of a contract of sale of goods within the scope of the then sales act.

That this was the intent and meaning of *Henningsen* is completely borne out by subsequent decisions of our own and by authoritative comment and action elsewhere. The next case in the field to reach this court was *Santor v. A. & M. Karagheusian, Inc.*, 44 N. J. 52 (1965) — a pre-Code action for loss-of-the-bargain caused by a defect in carpeting brought by a consumer-purchaser against the manufacturer (the corporate retailer had gone out of business and the principal owner thereof had left the state). The *Henningsen* thesis was extended and recovery was allowed. Justice Francis, again writing, made it perfectly clear that the appropriate concept of the cause of action introduced by *Henningsen* was new and constituted "strict liability in tort," not related to the law of sales. He said:

The trial court based its judgment for the plaintiff on the theory of breach of implied warranty of merchantability and a holding that in

such situation absence of privity of contract between the parties was of no legal consequence. As has been indicated, that thesis finds complete support in *Henningsen*. It seems important to observe, however, that the manufacturer's liability may be cast in simpler form.

\* \* \* \* \* \* \* \*

It must be said that in the present-day marketing milieu, treatment of the manufacturer's liability to ultimate purchasers or consumers in terms of implied warranty is simply using a convenient legal device or formalism to accomplish the purpose. It has been suggested, however, that conceptually such a doctrine is somewhat illusory because traditionally warranty · has had its source in contract. Prosser, *supra* (69 *Yale L. J.*, at pp. 1127–1134). Ordinarily there is no contract in a real sense between a manufacturer and an expected ultimate consumer of his product. The fact is that as a matter of public policy the law has imposed on manufacturers a duty to such persons irrespective of contract or a privity relationship between them. Such concept expressed in terms of breach of implied warranty of fitness or merchantability bespeaks a *sui generis* cause of action. Its character is hybrid, having its commencement in contract and its termination in tort. See *Prosser, Law of Torts* (3d ed. 1964), pp. 648, 651; Kessler, "The Protection of the Consumer Under Modern Sales Law, Part 1," 74 *Yale L. J.* 262, 278 (1964).

In this developing field of the law, courts have necessarily been proceeding step by step in their search for a stable principle which can stand on its own base as a permanent part of the substantive law. The quest has found sound expression, we believe, in the doctrine of strict liability in tort. Such doctrine stems from the reality of the relationship between manufacturers of products and the consuming public to whom the products are offered for sale. \* \* \* The obligation of the manufacturer thus becomes what in justice it ought to be — an enterprise liability, and one which should not depend upon the intricacies of the law of sales. \* \* \* (44 *N. J.* at 63, 64–65).

While *Santor* concerned only the manufacturer, *Henningsen* involved, as we have said, the retail seller as well. The concept and its consequences are equally appropriate to the latter and it is now generally so held. *See Prosser, Law of Torts* (4th ed. 1971) § 100, pp. 664–665; 2 *Frumer & Friedman, supra,* § 19A[1]. It should also be noted that *Santor* rejected, as inapplicable to the consumer-manufacturer situation, the sales act requirement of reasonable notice of the defect by the claimant. 44 *N. J.* at 67–68.

The distinctive nature of the new concept was again thoroughly reviewed by Justice Jacobs in *Rosenau v. City*

*of New Brunswick and Worthington Gamon Meter Co.,*
51 *N. J.* 130 (1968). There the pre-Code suit was by a
consumer of water supplied by the city for water damage
to his property allegedly caused by a defective meter man-
ufactured by Worthington and sold to the city some 22 years
before the injury occurred. (The appeal involved only the
action against the manufacturer.) The action was grounded
in both negligence and strict liability in tort. As to the
latter, the trial court granted summary judgment for the
manufacturer, and the Appellate Division affirmed, on the
basis that the six year statute of limitations (*N. J. S. A.*
2A:14–1) commenced to run when the manufacturer de-
livered the meter to the city, relying on contract principles
dealt with in breach of warranty actions by buyers against
their sellers. This court reversed, pointing out the distinc-
tive conceptual nature of the strict liability in tort concept
as set forth in *Santor,* and saying that the approach of the
courts below "* * * wholly ignored the tort basis of the
plaintiffs' claim against Worthington, as formulated in
*Santor,* and incongruously served to bar their claim long
before it arose and well before the meter was installed.
Their claim rested, not on any contractual basis, but on a
breach of duty with consequential injury. As in the negli-
gence field discussed earlier in this opinion, it accrued not
when duty was breached by the manufacture and distribu-
tion of the allegedly defective meter, but when the actual
injury occurred. That was in 1964 when the meter broke
causing damage to the plaintiffs' premises. The institution
of their strict liability in tort action shortly thereafter was
timely within the terms of *N. J. S.* 2A:14–1." (51 *N. J.*
at 144). In reaching this conclusion, Justice Jacobs
pointed out the limitation period prescribed by the Uni-
form Commercial Code (12A:2–725) "explicitly relates
to actions 'for breach of any contract for sale' and pre-
sumably was not intended to apply to tort actions between
consumers and manufacturers who were never in any com-

mercial relationship or setting." 51 *N. J.* at 143.[12] The inference of the dictum is plain that, if a cause of action in strict liability in tort against a manufacturer had accrued after the Code became effective, we would apply our general statutes of limitations and not that set forth in section 2–725 of the Code.

It is, of course, common knowledge that *Henningsen* produced a deluge of cases in other jurisdictions following its lead. While the earlier of those cases generally spoke, as *Henningsen* had, in terms of "implied warranty," conceptual and practical difficulties were soon recognized, arising by reason of the legal association of "warranty" with provisions relating thereto in the Uniform Sales Act and the Uniform Commercial Code, especially because neither of these statutes had been drawn with anything in mind but a contract between a "seller" and his immediate "buyer" and because of their prescriptions concerning notice of breach and disclaimers. The result generally was, as in this state in *Santor*, express recognition of a new concept — strict liability

[12]*Rosenau* was relied on by Judge Breitel of the New York Court of Appeals in his persuasive dissent in *Mendel v. Pittsburgh Plate Glass Co., supra* (305 *N. Y. S.* 2d 490, 253 *N. E.* 2d 207, 210), in which he was joined by Chief Judge Fuld and Judge Gibson. In that pre-Code case in which a bank customer was injured by an allegedly defective glass door manufactured and installed by the defendant many years previously, the majority held that the contract statute of limitations, which barred the plaintiff, applied to a product liability cause of action other than one for negligence, commencing to run from the date of installation of the defective item and not of the injury to the plaintiff. (New York's rule, prior to its adoption of the concept of strict liability in tort, had been that a cause of action for consequential personal injuries under a claim of breach of warranty by one in privity with the defendant was governed by the contract statute of limitations; as earlier indicated, New Jersey's rule was to the contrary.) The dissent urged that. product liability without proof of fault is strict liability in tort and should be controlled by the tortious wrong limitation period, which ran from the date of the injury. For a symposium on the *Mendel* decision, *see* 45 *St. John's L. Rev.*, 62–104 (1970), essentially disagreeing with the conclusion of the majority

in tort. For a full discussion of its history, development and scope see *Prosser, supra,* ch. 17, Products Liability.

The culmination came in the adoption of Section 402A of *Restatement, Torts 2d* (1965), under Topic 5, "Strict Liability." The section was headed "Special Liability of Seller of Product for Physical Harm to User or Consumer" and specified that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property * * *" in certain prescribed situations. The Comments make clear its intent and scope. Comment *l* (2 *Restatement, Torts 2d,* p. 354) says: "In order for the rule stated in this section to apply, it is not necessary that the ultimate user or consumer have acquired the property directly from the seller, although the rule applies equally if he does so. * * * The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant." Comment m (at pp. 355–356) speaks even more pertinently:

> A number of courts, seeking a theoretical basis for the liability, have resorted to a "warranty," either running with the goods sold, by analogy to covenants running with the land, or made directly to the consumer without contract. In some instances this theory has proved to be an unfortunate one. Although warranty was in its origin a·matter of tort liability, and it is generally agreed that a tort action will still lie for its breach,·it has become so identified in practice with a contract of sale between the plaintiff and the defendant that the warranty theory has become something of an obstacle to the recognition of the strict liability where there is no such contract. There is nothing in this Section which would prevent any court from treating the rule stated as a matter of "warranty" to the user or consumer. But if this is done, it should be recognized and understood that the *"warranty" is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.*
>
> The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill, or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is strictly liable although,

as is frequently the case, the consumer does not even know who he is at the time of consumption. *The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to "buyer" and "seller" in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act.* The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. *In short, "warranty" must be given a new and different. meaning if it is used in connection with this Section.* It is much simpler to regard the liability here stated as merely one of strict liability in tort. (Emphasis supplied).[13]

It is readily apparent that New Jersey case law to date, as previously discussed, is generally in accord with the Restatement thesis, with the addition that we have, by *Santor,* extended the concept to consumer loss-of-the-bargain situations, at least where the action is against the manufacturer.

When we consider Chapter 2, "Sales," of the Uniform Commercial Code, *N. J. S. A.* 12A:2–101, *et seq.,* by itself, it is clear that the emphasized conclusion of the Restatement Comments just quoted is sound. It must be recalled that the Code was principally drafted in the 1950's before the judicial strict liability revolution had really commenced. As Dean Prosser says, the draftsmen of the Code "initially failed entirely to sense the trend of the case law * * *." (*Prosser, supra,* at p. 658). And scarcely any significant changes in recognition thereof have been proposed since. Fundamentally, the chapter is commercially and contractually oriented. Its basic framework is that of transactions for the sale of goods between a buyer and his seller and, in the main, the legal incidents with which it deals contemplate

---

[13]Dean Prosser, *supra* at p. 658, points out, however, that: "The cases of warranty, whether on a direct sale between the parties or to the consumer without privity, are still important precedents in determining what the seller has undertaken to deliver."

two such contracting parties in the conventional commercial setting and claims based on economic loss or loss-of-the-bargain.

The chapter does purport, however, to govern to some extent actions between a consumer-user and the immediate seller for personal injury and physical harm to the article sold by reason of a defect therein, thereby departing from its general contractual thesis but not extending the full length of the doctrine of strict liability in tort. By *N. J. S. A.* 12A:2–715(2)(b), allowable consequential damages from a seller's breach of warranty include "injury to person or property proximately resulting from any breach of warranty." ("Seller" is used in the sense of a party's immediate predecessor in the distributive chain. *See N. J. S. A.* 12A:2–103(1)(d).) *N. J. S. A.* 12A:2–318 says, limitedly, that: "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person [not including physical harm to his property] by breach of the warranty. A seller may not exclude or limit the operation of this section." Official Comment 3 to the section (all Official Comments are found following each section in *N. J. S. A.*) says:

This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.

Official Comment 2 to *N. J. S. A.* 12A:2–313, dealing with express warranties, speaks in the same vein:

Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the

direct parties to such a contract * * *. The provisions of Section 2–318 on third party beneficiaries expressly recognize this case law development within one particular area. Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise.[14]

The meaning is plain that the provisions of the sales chapter of the Code are not intended to apply to actions for consequential personal injury and property damages except where the suit is between a buyer, or the limited additional class of beneficiaries, and the immediate seller, and even then, only on the basis of a "warranty" in the commercial sales sense as provided for in the chapter.

Moreover, even in the covered category of actions, the Code provisions carry, in the words of Dean Prosser, "far too much luggage in the way of undesirable complications." (*Prosser, supra,* at 656). *N. J. S. A.* 12A:2–719(3) permits consequential damages to be limited or excluded unless such is unconscionable, but limitation of such "damages for injury to the person [not to the property] in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." However, the Official Comment 3 to this subsection says that "[t]he seller *in all cases* is free to *disclaim* warranties in the manner provided in Section 2–316." (Emphasis supplied).

---

[14]In 1966, the Permanent Editorial Board for the Code proposed two alternatives to section 2–318, one of which extends a seller's warranty to persons "who may reasonably be expected to use, consume or be affected by the goods" and the other of which does the same and also permits recovery for damage to property. One or the other has since been adopted in a few states, but not in New Jersey. 1 *U. L. A.- U. C. C.* (master edition), pp. 249–250.

It may be noted that in Rhode Island, where section 2–318 was amended to cover a *manufacturer's,* as well as a seller's warranty, the Supreme Court has recently held that the amendment did not carry with it, as to consumer actions against a manufacturer, the four-year limitation period prescribed in section 2–725 in place of the state's two-year personal injury statute. *Kelly v. Ford Motor Company, supra* (290 *A.* 2d 607).

Apart from what might be said to amount to a practical contradiction, this flies in the face of the conclusions of *Henningsen* generally voiding disclaimers as to consumer-users as against public policy. Furthermore, *N. J. S. A.* 12A:2–607(3)(a) requires that a buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." This is contrary to *Santor,* at least as to consumer claims against manufacturers.

The upshot of the Code approach, if its provisions are to apply only, as the statutory language and comments dictate, to a limited class of consumer-user consequential damage actions against a retailer and case law is to govern as to other such actions and suits against manufacturers or others preceding the ultimate seller in the distributive chain, is one set of substantive rules for the first category of actions and another more liberal set for the second. This makes no sense and is unjust to the claimant, who in many instances may be able to obtain jurisdiction only over the ultimate seller and not over the manufacturer. And it would, of course, be most awkward and confusing when, as here, the manufacturer and retailer are both sued in the same action. We cannot attribute any such intention to the Legislature when it adopted the Code.

To return to the specific question before us — the statute of limitations provision, *N. J. S. A.* 12A:2–725 — it is obvious, especially in the light of the prior discussion of the intended scope of the sales chapter, that by its very language — "[a]n action for breach of any contract for sale" — and apart from New Jersey statutory and decisional history, that it cannot apply to a consumer-user action against a manufacturer for consequential personal injury and property damage. To put it conversely, it could at best only have application where the suit involves two directly contracting parties or where the plaintiff is within the limited third-party beneficiary category permitted by

the Code. This conclusion is borne out by the Official Comment to the section clearly indicating its conventional commercial orientation:

Purposes:
To introduce a uniform statute of limitations for *sales contracts*, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose *contracts* have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred. This Article takes *sales contracts* out of the general laws limiting the time for commencing *contractual actions* and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period. (Emphasis supplied).

Again, we would have two sets of rules, their application depending on who is sued. Thus, Heavner's action against Uniroyal is controlled by our general statutes of limitations — two years for personal injuries and six years for property damage, both computed from the date of the accident — and, if New Jersey limitations law were to be applied, the lower courts were correct in dismissing the personal injury and *per quod* counts.

We are also convinced that the same result is to be reached as to the counts against the retailer Pullman. This entire suit is most certainly a consumer's action in strict liability in tort within the principles of *Henningsen* and its progeny. Our cases follow the previously discussed view of the Restatement and Dean Prosser that such causes of action represent a new concept not governed by the commercial contract thesis of the Code provisions. No advantage can be gained by pleading them in terms of breach of warranty, express or implied. When the gravamen is a defect in the article and consequential personal injury and property damages are sought, they will be taken for what they actually are, no matter how expressed. (This applies no matter against whom the action is brought.) At the time New Jersey adopted the Code, *Henningsen* had been decided and this new concept born. It has to be assumed

that the Legislature was cognizant of this and the Code must be interpreted accordingly in this state.[15] We may parenthetically also observe that, to our knowledge, no one has ever contended anywhere that adoption of the Code did away with strict liability in tort. Our view is strongly buttressed by the fact of the contemporaneous amendments and non-amendments of our general statutes of limitations earlier outlined. We consequently further hold that *N. J. S. A.* 12A:2–725 does not apply to strict liability in tort actions for consequential personal injury and property damage against the ultimate seller or supplier and that such actions are governed, like those against a manufacturer, by our general statutes of limitation.[16]

---

[15] It may be noted that, while the plaintiffs would, if New Jersey limitations law were to govern, benefit from the application of *N. J. S. A.* 12A:2–725, many others would find their causes of action barred before the injuries or damage occurred or were known, by reason of the fact that the four-year period runs from the delivery of the defective article. We do not countenance such a result unless legislation unequivocally and absolutely requires it. *See e. g. Fernandi v. Strully, supra* (35 *N. J.* 434) ; *Rosenau v. City of New Brunswick and Worthington Gamon Meter Co., supra* (51 *N. J.* 130) ; *New Market Poultry Farms, Inc. v. Fellows,* 51 *N. J.* 419 (1968) ; *Diamond v. N. J. Bell Telephone Co.,* 51 *N. J.* 594 (1968). *Compare Rosenberg v. Town of North Bergen,* 61 *N. J.* 190 (1972).

[16] We do not reach the question whether *N. J. S. A.* 12A:2–725 applies to actions merely for loss-of-the-bargain or economic damage in the commercial sense. *Santor* extended strict liability in tort to such actions where the suit was against the manufacturer, a situation not encompassed within the Code. The statute of limitations was not involved. *Santor* was expressly not followed in California, *Seely v. White Motor Co.,* 63 *Cal.* 2d 9, 45 *Cal. Rptr.* 17, 403 *P.* 2d 145 (1965), although recovery was allowed on a finding of an express warranty running from the truck manufacturer to the ultimate purchaser. Justice Peters, in a concurring opinion, would have adopted the rationale of *Santor.* He went on to make the interesting suggestion that the Code should not apply at all in situations involving "the ordinary consumer," but should be restricted to dealings between businessmen and merchants. He would find the plaintiff in *White,* an owner-driver of a single truck seemingly like Heavner here, to be an "ordinary consumer." 63 *Cal.* 2d at 27–28, 45 *Cal. Rptr.* at 29–30, 403 *P.* 2d at 157–158.

The judgment of the Appellate Division is affirmed.

*For. affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL and MOUNTAIN, and Judge CONFORD—6.

*For reversal*—None.