651 A.2d 503

SAMUEL GANTES, ADMINISTRATOR AD PROSEQUENDUM OF GRACIELA GONZALEZ, ON BEHALF OF THE ESTATE OF GRACIELA GONZALEZ AND ON BEHALF OF THE HEIRS-AT-LAW OF GRACIELA GONZALEZ, PLAINTIFF, v. KASON CORPORATION, OTTO CUYLER ASSOCIATES AND XYZ CO. I–V (BEING FICTITIOUS BUSINESS ENTITIES WHOSE IDENTITIES ARE CURRENTLY UNKNOWN), DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided November 16, 1993.

*Alan Y. Medvin* for plaintiff (*Medvin & Elberg*, attorneys).

*John S. Wisniewski* and *Peter B. Van Deventer, Jr.* for defendant Kason Corporation (*Robinson, St. John & Wayne*, attorneys).

BEGLIN, A.J.S.C.

On February 27, 1991, Graciela Gonzalez, a resident of Gainesville, Georgia, was employed at the Dutch Quality House, a food processing plant in Gainesville. It is alleged that while working on a shaker machine used to separate chicken parts, she was struck in the head by one of the machine's moving parts, causing her death.

Kason Corporation, the defendant, is a New Jersey corporation with its principal place of business in Linden, New Jersey. It manufactured the machine in question, a 48″ Kason Vibroscreen, and sold it to Salvo Corporation, of Fall River, Massachusetts, for shipment to Synder's Potato Chips, of Berlin, Pennsylvania in 1977. Snyder sometime after April 1985 sold the machine to Otto Cuyler Associates, who in turn sold it to Dutch Quality House. There is some question as to whether Kason manufactured the machine at its New Jersey plant or at its facility in Champlain, New York, as the Order itself is stamped "Received, September 9,

1977, Kason Corporation, Champlain, N.Y.", but all subsequent documentation including order confirmation from both buyer and seller, and shipment instructions and order appear to have issued from the New Jersey facility. For purposes of this motion, the Court will assume the machine was manufactured by Kason in New Jersey. It should be noted, however, that the machine appears to bear a serial number with the prefix KC, indicating according to defendant that the place of manufacture was Champlain, New York.

■ Defendant has moved for dismissal of the complaint on conflict of laws and forum non conveniens grounds. Because the motion introduces facts outside the pleadings, it is to be treated as one for summary judgment. *R.* 4:6–2.

■ The parties agree that if this action were instituted in Georgia, it would be subject to that jurisdiction's 10 year statute of repose:

> No action shall be commenced ... with respect to any injury after ten years from the date of the first sale for use ... of the personal property causing or otherwise bringing about the injury. *O.C.G.A.* 51–1–11(b)(2).

By its terms, the statute applies to a product liability action such as this, and the period of repose commences to run when the manufactured item is placed in the stream of commerce. *Thorpe v. Robert F. Bullock, Inc.,* 179 *Ga.App.* 867, 348 *S.E.*2d 55 (1986) aff'd. 256 *Ga.* 744, 353 *S.E.*2d 340 (1987). Here, the vibroscreen was shipped to Snyder's Potato Chips on November 1, 1977, more than ten years before plaintiff's decedent sustained her injuries. Clearly, if this motion is granted, plaintiff is barred from instituting a comparable negligence and strict liability action in Georgia. *Hatcher v. Allied Products Corp.,* 796 *F.*2d 1427 (11th Cir.1986), *LFE Corp. v. Edenfield,* 187 *Ga.App.* 785, 371 *S.E.*2d 435 (1988).

In *Heavner v. Uniroyal, Inc.,* 63 *N.J.* 130, 305 *A.*2d 412 (1973), a case not unlike this, residents of North Carolina brought suit in New Jersey for injuries sustained in an accident in North Carolina allegedly caused by a defective tire manufactured by a New Jersey company which was on a truck trailer purchased by the

plaintiff in North Carolina. At the time of commencement of the action, the applicable North Carolina statute of limitations had expired and any action in that state was barred. By bringing the action in New Jersey, the plaintiffs raised the choice of law question of whether New Jersey as the forum state should apply its statute of limitations or that of North Carolina. The Court decided "to discard the mechanical rule that the limitations law of this state must be employed in every suit on a foreign cause of action."

> We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state. *Id.* at 141, 305 *A.2d* 412.

It is interesting to observe that in footnote 3 the Supreme Court stated "we do not believe that New Jersey has any sufficient interest in this action to call for the application of its substantive law in preference to that of North Carolina under ... governmental interest choice-of-law principles ... Our only possible interest is that Uniroyal, a national company, is incorporated here and that is not enough ... All other interests are North Carolina's." *Id.* at 135, 305 *A.2d* 412.

The question here is whether New Jersey has any "substantial interest" in this matter, and in that regard it is appropriate to bear in mind what has often been stated by our Supreme Court:

> At the outset of our analysis we accept as fundamental the notion that the essence of our civil laws is to achieve justice and, in so doing, provide redress for wrongful injury ... As the United States Supreme Court has recognized recently, this great impulse of our law applies with special force in the tort area where "... over the centuries the common law ... has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights." *Merenoff v. Merenoff,* 76 *N.J.* 535 at 547, 388 *A.2d* 951 (1978).

This principle, in cases such as this, is intended to protect the interests of residents of the forum not the foreign state, or as was

expressed in *Pine v. Eli–Lilly & Co.*, 201 *N.J.Super.* 186, 492 *A.*2d 1079 (App.Div.1985):

> New Jersey's overriding and predominant governmental interest in compensating domiciliaries for injuries caused by the tortious conduct of others (is) alone sufficient to apply our statute of limitations. *Id.* at 190, 492 *A.*2d 1079.

However, "New Jersey has no interest in protecting the compensation rights of a non-domiciliary resident." *Deemer v. Silk City Textile Mach. Co.*, 193 *N.J.Super.* 643 at 649, 475 *A.*2d 648 (App.Div.1984). When that "predominant" interest is not present, then, when the injured party is not a New Jersey resident, what governmental interest would dictate New Jersey apply its substantive law, which contains no period of repose,. rather than the statute of the place where injury occurred? The Appellate Division in *Pine* indicated in a statute of limitations context that this is a qualitative rather than a quantitative analysis, not a mechanical counting of the factual contacts with each respective state. "Only contacts which are likely to promote valid state policies are considered relevant." *Henry v. Richardson–Merrell, Inc.*, 508 *F.*2d 28 at 32 (3d Cir.1975).

Plaintiff urges New Jersey has a strong interest in assuring that machinery and products manufactured within its borders by New Jersey corporations will be safe for their intended use regardless of where such items may ultimately come to rest in the normal stream of commerce. Should that product be defective, it is urged, it matters little whether the defect caused injury here or elsewhere or where the injured party resides. It is the source of the defect that is significant, and this state's interest is to insure that machines produced here may be safely used wherever they might be found.

This governmental interest of deterrence was recognized and analyzed in *Deemer, supra:*

> Here there are competing policies that bear on this issue: (1) those relating to the defect-free design and manufacture of a product, and (2) those that regulate the full and fair compensation of the injured party. The former would militate in favor of New Jersey law, the latter for North Carolina's. Whatever incidental benefits a liability judgment may contribute towards the correction of a defective design or the deterrence of wrongful conduct with respect to the future distribution of a

product, the principal aim of a product liability or other personal injury claim is fairly to compensate the injured party. We therefore determine that that second of the two noted policies must control.

     ·     ·     ·     ·     ·     ·     ·     ·

Furthermore, the effect of holding New Jersey law to be applicable in a matter of this kind is to subject any corporation conducting manufacturing activities in this state against whom a product liability claim is asserted to suit in New Jersey under New Jersey law. Such a holding would have the undesirable consequence of deterring the conduct of manufacturing operations in this state and would likely result in an unreasonable increase in litigation and thereby unduly burden our courts.

     ·     ·     ·     ·     ·     ·     ·     ·

Finally, we are satisfied that New Jersey's contacts with the dispute and with the parties are not sufficient to render New Jersey's interest in this matter paramount. Although the product allegedly causing the injuries was designed and manufactured in New Jersey and the manufacturer Silk City was once incorporated in this state, all the other incidents of the matter involve North Carolina. Both the plaintiff and her decedent were domiciled in North Carolina; the decedent filed a worker's compensation claim in North Carolina; the machine was delivered to South Carolina and was moved to another plant in North Carolina, and the company which bought the assets of Silk City is located in North Carolina. Thus, on balance, the respective contacts of the related jurisdictions dictate the application of North Carolina law. 193 *N.J.Super.* at 650–652, 475 *A.2d* 648.

■ Plaintiff however argues that Georgia's statute is one of repose, not of limitation, and therefore its interests are not as strong. The 10 year period of repose is a deliberate recognition of that state's governmental interest in allowing its businesses to operate free of the concern that alleged defects will produce product liability claims after the passage of a set period of time. It is not for this court to debate the merits or wisdom of such a legislative determination. But it must be recognized that such, in a qualitative sense, can only be regarded as significant. Georgia's interest in this regard is certainly at the very least as compelling as New Jersey's "deterrence" interest. Indeed, Georgia may be said to share such an interest in deterring future misconduct, albeit subject to its 10 year limitation. There is nothing to indicate Georgia's interest is parochial, limited to protecting only manufacturers within its borders. The world of business and

industry today is national if not global, and, as shown by this case, machinery regularly moves from state to state.

The distinction plaintiff seeks to draw between statutes of limitation and repose has not been endorsed by our courts.

While *Heavner* analyzes a traditional statute of limitation, the issue before us involves a statute of repose. Nevertheless we see no reason to depart from the *Heavner* analysis. Statutes of repose have both procedural and substantive aspects, and, thus are even more apt to be borrowed by a forum state as part of the controlling state's law. *Mowrey v. Duriron Co., Inc.,* 260 *N.J.Super.* 402, footnote 5 at 415, 616 *A.2d* 1300 (App.Div.1992).

As the *Mowrey* decision indicates, if this case were to remain here, New Jersey must apply the Georgia statute of repose. That being so, it matters not that statutes of repose have substantive aspects and may be distinguished from statutes of limitation, as was recognized in *Van Slyke v. Worthington,* 265 *N.J.Super.* 603, 628 *A.2d* 386 (Law Div.1992). Such will not change the result.

Having identified the governmental policies reflected by the laws of the two states, the next step in the two prong analysis requires a review of the factual contacts of the parties with each jurisdiction. The machine in question was manufactured in New Jersey in 1977 by a New Jersey corporation. It was sold and delivered to a customer in Pennsylvania, ultimately ending up after subsequent transactions in a plant in Georgia. There it was used in the course of her employment by a resident of Georgia, whose personal representative brings this action on behalf of her heirs at law, also Georgia residents.

Having identified the governmental policies present here, each states' contacts and interests and the parties relationship thereto, a qualitative analysis of all the factors involved mandates the conclusion that New Jersey does not have a compelling interest in this case. Georgia's interest predominates, and its statute of repose must prevail. See *Veazey v. Doremus,* 103 *N.J.* 244, 510 *A.2d* 1187 (1986).

Accordingly, defendant's motion is granted and the Complaint against Kason Corporation is dismissed with prejudice. The

Order submitted with the motion has been entered this date and conformed copies are enclosed for each party.