**Maria Cardwell TOMLIN, et al., and Christine Williams Harrell, et al., Plaintiffs-Appellants,**

v.

**The BOEING COMPANY, Defendant-Appellee.**

No. 79–4369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1981.

Decided July 13, 1981.

Rehearing and Rehearing En Banc Denied Sept. 22, 1981.

Robert S. Cooper, Jr., Cooper & Cooper, Baton Rouge, La., for plaintiffs-appellants.

John D. Dillow, Seattle, Wash., argued for defendant-appellee; Richard Prentke, Seattle, Wash., on brief.

Before CHOY and BOOCHEVER, Circuit Judges, and FRYE,* District Judge.

BOOCHEVER, Circuit Judge:

The laws of four states and the Republic of South Vietnam are potentially involved in this case. The issue is whether the appellants' wrongful death action against the Boeing Company is time-barred. The answer turns on which statute of limitations governs. The district court, interpreting Washington conflicts law, concluded that a Washington court would not apply Washington's three year statute of limitation and dismissed the case as time-barred under the other states' shorter limitation periods. We conclude that a recent decision of the Washington Supreme Court indicates that it would apply Washington's three year statute and reverse.

The relevant facts are not disputed. Two servicemen, Barry Tomlin and Samuel Harrell, were killed in a helicopter crash in South Vietnam on May 10, 1972. The helicopter which they were piloting crashed because an aft rotor blade developed a crack and separated in mid-flight. Vetrol, a Pennsylvania based division of The Boeing Company, built the helicopter and rotor blade. The United States Army acquired the helicopter in 1965.

Tomlin and Harrell were each survived by a wife and two children. Tomlin's wife, Maria, and children lived in Alabama at the time of the accident. Maria Tomlin is the

* The Honorable Helen J. Frye, United States District Judge for the District of Oregon, sitting by designation.

administratrix of Tomlin's estate which is being probated in Alabama. At the time she filed her complaint, she had moved to Georgia. Christine Harrell and her children lived in Florida at the time of the accident and she is probating Harrell's estate there. She was still living in Florida when she filed her complaint.

Boeing's principal place of business is in the State of Washington.

Tomlin and Harrell brought this action for the wrongful deaths of their husbands in the Federal District Court for the Western District of Washington on May 9, 1975, a day short of Washington's three-year statute of limitation. Both sides began extensive discovery and a pretrial order containing a lengthy stipulation of facts was filed on June 30, 1978. On March 1, 1979, Boeing moved for summary judgment on the ground that the action was barred by the statute of limitation. On May 14, 1979, Judge Voorhees granted Boeing's motion and this appeal followed.

No party contends that the law of Vietnam should be applied and we have not considered the possibility. Each of the four states, namely, Alabama, Florida, Pennsylvania and Washington, has a wrongful death statute and the only conflict with which this appeal is concerned relates to the applicable limitation period. Alabama and Florida both have two-year statutes of limitation applicable to wrongful deaths, Pennsylvania has a one-year statute, and Washington has a three-year statute.[1] The case is thus time-barred unless Washington's statute applies.

This is a diversity case and Washington is the forum state. A federal court sitting in Washington will apply Washington law, including its conflicts law. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

Washington has rejected the doctrine of *lex loci delicti* which requires a forum state to apply the substantive law of the place of the injury. Instead it applies the law of the state with the most significant contacts and interest in having its law applied. *Johnson v. Spider Staging Corp.*, 87 Wash.2d 557, 555 P.2d 997, 1000 (1976).

In a thoughtful opinion, the district judge suggested that a Washington court might analyze a conflict in statutes of limitation using either of two approaches. Under the first approach (modified interest analysis), a Washington court would first decide which wrongful death act applied. If the court decided that a foreign state had the greatest interest in application of its wrongful death act, the court would next determine whether the applicable statute of limitation was substantive or procedural. Washington would apply the statute of limitation of the foreign state's wrongful death act if substantive, but its own statute of limitation if procedural.

Since the two plaintiffs were domiciliaries of Alabama and Florida at the time of the accident, the judge concluded that those two states were the most interested in having their wrongful death acts applied. He further concluded that the Alabama and Florida statutes of limitation relating to wrongful deaths were substantive. Thus he concluded that Washington would apply the two-year statute of limitation from those states rather than Washington's three-year statute.

The district judge considered it more likely that Washington would follow modified interest analysis and look to the applicable wrongful death act before examining the statute of limitation. Nevertheless, the judge alternatively examined how a Washington court applying "direct" interest analysis would approach a conflict in statutes of limitation. Under this approach, the judge analyzed the choice of law issue relating to the statute of limitation independently of the wrongful death act to be applied. The judge believed that Pennsylvania had the greatest interest in seeing its shorter statute of limitation applied, and concluded

1. Ala.Code § 6–5–410(d); Fla.Stat. § 95.-11(4)(d); 12 Pa.Cons.Stat. § 1603; Wash.Rev. Code Ann. § 4.16.080(2). The Pennsylvania statute is now two years. See footnote 9, *infra.*

that a Washington court would dismiss the appellants' case under this approach as well.

## I. APPLICATION OF MODIFIED INTEREST ANALYSIS

As discussed, the district court's primary approach used modified interest analysis. Under that analysis, the court first used interest analysis to determine which state's wrongful death act was applicable and then used a substantive-procedural test, rather than interest analysis, to determine whether that state's statute of limitation controlled. Despite the deference granted to district court judges in interpreting questions of local law, see *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980), our reading of Washington law convinces us that a Washington court would apply direct interest analysis to both aspects of the conflicts issue, rather than a modified interest analysis. We also believe that a Washington court applying direct interest analysis would apply its own statute of. limitations.

One reason the district court considered it more likely that Washington would follow a modified interest analysis was that Washington has a "borrowing statute." This statute provides that where a cause of action arises between two non-residents in a foreign state, a Washington court will "borrow" the statute of limitation of the state where the cause of action arose. Wash.Rev. Code Ann. § 4.16.290.[2] Because such a statute might discourage forum shopping, the judge concluded that there would be less need to use direct interest analysis for resolution of conflicts in statutes of limitation.

We do not believe that Washington's borrowing statute can be considered authority for not applying interest analysis to a conflict in statute of limitation, however. First, the Washington borrowing statute, which is narrowly drawn, is inapplicable to this case because Boeing is a resident of Washington.[3] Second, the statute, which was first enacted over a century ago, was designed to prevent automatic application of the forum state's statute of limitation to foreign claims. But, interest analysis has essentially the same purpose. Because the borrowing statute is inapplicable and was enacted before the state's adoption of the interest analysis approach to conflicts problems, it does not support the position that interest analysis should not be applied to a conflict in statutes of limitation.

In the same situation, the Supreme Court of Wisconsin has twice applied interest analysis to conflicts between statutes of limitation when Wisconsin's borrowing statute was inapplicable. See *Central Mutual Insurance Co. v. H. O., Inc.*, 63 Wis. 54, 216 N.W. 239, 243 (1974) ("borrowing statute does not block the path" of an action to which it is inapplicable); *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 206 N.W.2d 414, 418 (1973).[4]

The highest court of New Jersey and the First Circuit, interpreting New Hampshire law, have. applied interest analysis to statutes of limitation.[5] Additionally, it has been suggested, in either somewhat ambiguous terms or with conflict in authority, as the applicable approach in California, the

---

**2.** Wash.Rev.Code Ann. § 4.16.290 provides:

> *Foreign statutes of limitation, how applied.* When the cause of action has arisen in another state, territory or country between nonresidents of this state, and by the laws of the state, territory or country where the action arose, an action cannot be maintained thereon by reason of the lapse of time, no action shall be maintained thereon in this state.

**3.** The Washington statute only applies in the unlikely event that both a non-resident plaintiff and defendant seek to sue on a foreign claim in a Washington court.

**4.** If Washington's borrowing, statute were applicable, interest analysis would be inappropriate. *See Mack Trucks, Inc. v. Bendix-Westinghouse Auto Air Brake Co.*, 372 F.2d 18, 20–21 (3d Cir. 1966); *Posner v. Merrill Lynch, Pierce, Fenner & Smith*, 469 F.Supp. 972, 978–79 (S.D. N.Y.1979). *But see*, Milhollin, Interest Analysis and Conflicts Between Statutes of Limitation, 27 Hastings L.Rev. 1, 25–45 (1975) (hereinafter cited as "Milhollin").

**5.** *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412, 415–18 (1973); *Dindo v. Whitney*, 429 F.2d 25 (1st Cir. 1970).

District of Columbia, Indiana, Michigan and Oregon.[6]

Although there is authority directly opposed to this position, *Cuthbertson v. Uhley*, 509 F.2d 225 (8th Cir. 1975) (the court, interpreting Minnesota Law, refused to extend interest analysis to statutes of limitation), *accord, Wright v. Fireman's Fund Ins. Co.*, 522 F.2d 1376 (5th Cir. 1975) (Louisiana Law) the modern commentators have uniformly advocated direct interest analysis to conflicts in statutes of limitation. As Professor Leflar states:

> There is no inherent reason why the choice between statutes of limitations should be handled any differently than other choice-of-law problems. R. Leflar, *American Conflicts of Law*, § 128, at 256 (3d ed. 1977).

*See Milhollin, supra* note 4, at 16; Grossman, *Statutes of Limitations and the Conflict of Laws: Modern Analysis*, 1980 Ariz. St.L.J. 1, 42–43, 64–65 (1980); Wurfel, *Statutes of Limitations in the Conflict of Laws*, 52 N.C.L.Rev. 489 (1974); *Note: An Interest-Analysis Approach to the Selection of Statutes of Limitation*, 49 N.Y.U.L.Rev. 299 (1974).

Although the authorities certainly suggest that Washington would extend interest analysis to a conflict in statutes of limitation, the district court noted that no Washington case had done so. But the issue has never been addressed by a Washington court.[7] We believe, though, that the Washington Supreme Court's decision in *Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 555 P.2d 997 (1976), clearly portends what the result would be. There the Washington court applied an examination of state contacts and governmental interest to resolve a conflict as to the limitation on recoverable damages under two ·wrongful death acts. After *Johnson*, we do not believe a Washington court would approach statutes of limitation conflicts differently because there is little, if any, basis for distinguishing between a time limitation and a damage limitation.

Statutes of limitation and limitations on damages are both part of the total

---

**6.** Two Ninth Circuit cases have considered California law. In *Horton v. Jessie*, 423 F.2d 722 (9th Cir. 1970), a brief per curiam opinion, the court noted "under the California significant contacts approach, we find too little Missouri significant contacts and too many in California to apply the Missouri statute [of limitation]." In *Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345 (9th Cir. 1974) the panel adopted the reasoning of the district court which concluded interest analysis was inappropriate to a conflict in statutes of limitation under California law. Judge Wright, concurring specifically, believed that *Horton* controlled. There have been conflicting interpretations of District of Columbia Law. *Compare Farrier v. May Dept. Stores*, 357 F.Supp. 190 (D.D.C.1973) (interest analysis applies to statute of limitation), *with, Manatee Cablevision Corp. v. Pierson*, 433 F.Supp. 571 (D.D.C.1977) (interest analysis does not apply). In *Gianni v. Fort Wayne Air Service*, 342 F.2d 621 (7th Cir. 1965) the court concluded that Indiana would apply interest analysis, but in *Horvath v. Davidson*, 148 Ind.App. 203, 264 N.E.2d 328, 332 (1970), the court concluded that Indiana would always apply its own statute of limitations. In *Baldwin v. Brown*, 202 F.Supp. 49 (E.D.Mich.1962) (interpreting Michigan Law) and *Myers v. Cessna Aircraft Corp.*, 275 Or. 501, 553 P.2d 355, 367 (1976), the courts discuss interest analysis as an alternative basis supporting their holdings.

**7.** In *Chandler v. Humphrey*, 177 Wash. 402, 31 P.2d 1012, 1013 (1934) the Washington Supreme Court noted the traditional distinction between statutes of limitation which are procedural and those which are substantive. That case was decided long before the adoption of interest analysis in *Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 555 P.2d 997 (1976).

More recently, an intermediate appellate court in *Sobo v. Sobo*, 28 Wash.App. 766, 626 P.2d 520, 521 (1981), cited *Chandler* for this distinction. We will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law, *see Commissioner v. Estate of Bosch*, 387 U.S. 456, 464–465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), but as the court in *Sobo* noted, the case did not involve a statute of limitation. Rather, it involved the application of a Missouri statute which conclusively presumes payment of a Missouri judgment after ten years. A Missouri resident sought to enforce in a Washington court a judgment that was invalid under this statute. The *Sobo* court relied upon section 116 of the Restatement (Second) of Conflicts (1971) which provides that a state will not enforce a judgment from a foreign state that "has been discharged by payment or otherwise." See 626 P.2d at 522. The case thus does not deal with the issue we are confronted with here.

scheme by which a state seeks to achieve, in tort cases, its policies of compensation and deterrence without placing any undue burdens on defendants.

*Milhollin, supra* note 4, at 15.

If there are any valid reasons to apply a different approach to the determination of what wrongful death statute of limitation applies from that of what wrongful death damage limitation provision governs they have not been presented to us. Accordingly we find *Johnson* controlling.

Moreover, if, as the district court determined, the Florida and Alabama wrongful death acts applied, the resolution of this case would depend not on the underlying rationale for applying the statutes of limitation of those states, but instead on a mechanical determination of whether those statutes bar "the right and not merely the remedy." Restatement (Second) of Conflicts § 143 (1971). Where a statute of limitations bars a right, it is considered substantive. Where it bars the remedy it is considered procedural. This is a rather artificial distinction at best. As Professor Sedler has observed:

> The struggles of the courts to determine whether the locus has destroyed the right are amusing, even if the results are inconsistent and the reasoning at times most specious.

Sedler, *The Erie Outcome Test as a Guide to Substance and Procedure in the Conflict of Laws*, 37 N.Y.U.L.Rev. 813, 848 (1962).

Perhaps the most reliable test to determine whether a statute bars the right is to look to the manner that the provision is interpreted by the courts of the state which enacted it. Other tests sometimes used by the courts to determine whether a limita-

tion provision is substantive are, in this case, inconclusive.[8]

The courts of Alabama have consistently interpreted their wrongful death statute of limitation as substantive, *Downtown Nursing Home, Inc. v. Pool*, 375 So.2d 465, 466 (Ala.1979) *cert. denied*, 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980), but Florida's statute is far from clear. In its nearly one hundred year history, no reported Florida case has decided whether the limitation period applicable to wrongful deaths is substantive or procedural. Nor does it appear likely that there will be a definitive interpretation of the statute involved here, because in 1972, shortly after Harrell's accident, Florida substantially amended its wrongful death act.

One could well conclude that the Florida statute is procedural. This would lead to the absurd result that Harrell's estate might recover while Tomlin's would not, even though the decedents were killed in the same crash. We realize that such anomalies may occur any time there are several parties and complex choice of law questions to be resolved, but such results should certainly be avoided where possible. We cannot believe that Washington, after adopting interest analysis, would make such important rights hinge on such technical distinctions.

Consequently, we conclude that a Washington court would follow the *Johnson* choice-of-law analysis in resolving the statute of limitation conflict.

## II. INTEREST ANALYSIS APPLIED TO THE CONFLICT IN STATUTES OF LIMITATION

The purpose of a statute of limitation is to protect courts and defendants. By bar-

---

**8.** One test used is whether the statute of limitation is directed specifically towards the wrongful death act, such as when the limitation period is contained within the same statutory section. Restatement (Second) of Conflicts § 143, comment *c* (1971). In Florida, unlike Alabama, the limitation period is contained in a separate code section. Boeing contends that the Florida statute of limitation was separated from the section on wrongful deaths as part of a reorganization of the Florida code. Given an ambigu-

ous question of local law, we would ordinarily follow the decision of a district court. But in this case, a Washington district court is in no better position than we are to evaluate Florida law. *See Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974) (requiring certification of question of Florida law where the Second Circuit and the New York district court were both "outsiders" lacking exposure to local law.)

ring stale claims, such statutes conserve judicial resources and provide repose to defendants. *Ruth v. Dight*, 75 Wash.2d 660, 453 P.2d 631, 634–35 (1969); *Milhollin, supra* note 4 at 10–11. The district judge correctly concluded that there was no conflict between the interests of the four states with regard to conserving judicial resources. Washington has expressed a policy of not closing its courts to wrongful death actions for three years. If Washington chooses to allow a case to be brought in its courts that would be time-barred in Alabama, Florida, or Pennsylvania, the judicial resources of those states are unaffected.

The district judge also correctly determined that application of Washington's three year statute would not frustrate any policy of Alabama or Florida to protect in-state defendants. Although those states would have barred the action in their courts, they are not interested in denying a recovery to their own residents where it would not affect a resident defendant.

■ The conflict, then, is between Pennsylvania's former one year statute and Washington's more plaintiff oriented three year statute. Pennsylvania contacts include the location of a Boeing subdivision and the place of manufacture of the rotor blade. Washington is the forum and principal place of business of Boeing, one of the largest corporations in the state. We believe that these contacts present a fairly even balance between the two states and we would not hesitate to affirm the district court's decision as to how Washington would resolve the issue were it not for the guidance furnished by Washington's highest court.

In balancing the interests of the two states, we believe that the district court erred in failing to give adequate weight to the Washington Supreme Court's opinion in *Johnson, supra*. In that case the court considered the Kansas wrongful death act provision limiting damages to $50,000. The case involved faulty scaffolding manufactured in Washington. Although the decedent was a domiciliary of Kansas, the product was ordered from a Kansas City distributor, and the accident occurred there, the Washington court still rejected application of the Kansas wrongful death act in favor of Washington law because

> Washington's deterrent policy of full compensation is clearly advanced by the application of its own law.

*Johnson*, 555 P.2d at 1002. By providing for a longer period of limitation, Washington has in effect similarly expressed a policy of deterring the conduct of tort defendants.

As the district judge noted in his opinion, courts have generally applied the law of the state where a decedent's beneficiaries live because it is likely to be the state most interested in seeing that its residents are compensated. *See, e. g., Sibley v. KLM—Royal Dutch Airlines*, 454 F.Supp. 425, 428 (S.D.N.Y.1978). We believe *Johnson's* departure from this general pattern to further Washington policy is a significant indication of how the Washington court would decide this case.

It is, as we have discussed in the previous section, a small step to conclude that the deterrent policy provided by a more liberal damage recovery advances interests similar to that provided by a longer statute of limitation.

The principal distinction between this case and *Johnson*, is that the manufacturing activity here actually took place in another state. We are not persuaded that this distinction should lead to a different result. In this case, as in *Johnson*, the defendant has its principal place of business in Washington and Washington is the forum. We believe Washington would be interested in deterring the wrongful conduct of its most prominent corporate citizen regardless of where the manufacturing is performed. This action is against the Boeing Company, not its Vertol division. Our attention has not been directed to any equally strong

defendant protecting policy of Pennsylvania, other than what might be inferred from that state's shorter statute of limitations.[9] Finally, Boeing can hardly claim unfamiliarity with Washington law or surprise that Washington law might be applied. *See Allstate Insurance Co. v. Hague*, —— U.S. ——, ——, 101 S.Ct. 633, 642–643, 66 L.Ed.2d 521 (1981); Restatement (Second) of Conflicts § 6, comment *g* (1971). When a corporation is sued at its principal place of business one would ordinarily expect that state's law to govern.

In applying the Washington statute, we are also guided by Washington's reliance on a more general principle of law favoring the decision of cases on their merits. This policy has been expressed by the Washington Supreme Court which has stated that where it is "questionable which of . . . two statutes [of limitation] appl[y] the rule is that the statute applying the longest period is generally used." *Shew v. Coon Bay Loafers, Inc.*, 76 Wash.2d 40, 455 P.2d 359, 366 (1969). Recently, in reversing a district court's interpretation of the applicable California statute of limitation, a panel of this court referred to this principle. *Marshall v. Kleppe*, 637 F.2d 1217, 1224 (9th Cir. 1980).

We therefore conclude that Washington would apply its three year statute of limitation and reverse the decision of the district court.

REVERSED.