Leroy C. JENKINS and Mary Ellen Jenkins, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

Mary Ellen JENKINS, individually and as Personal Representative of the Heirs and Estate of Leroy C. Jenkins, Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

Henry C. MEYERS and Merle C. Meyers, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

Henry C. MEYERS and Merle C. Meyers, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

Fred J. BELISLE and Anona Belisle, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

Civ. Nos. 83–4055, 84–4072, 83–4057, 84–4081 and 83–4056.

United States District Court, D. Idaho.

May 21, 1985.

Clark Gasser, Steve Richert, Green, Service, Gasser & Kerl, Pocatello, Idaho, Rus-

sell W. Budd, Frederick M. Baron & Associates, P.C., Dallas, Tex., for plaintiffs.

John L. King, Boise, Idaho, Richard B. Evans, Sarah B. Howden, Gudmundson, Siggins & Stone, San Francisco, Cal., for Armstrong World Industries, Inc.

Gary T. Dance, N. Randy Smith, Merrill & Merrill, Chartered, Pocatello, Idaho, for Celotex Corp.

Charles Johnson III, L. Charles Johnson, Johnson and Olson, Chartered, Pocatello, Idaho, for Crown Cork & Seal Co., Inc.

Michael W. Moore, Imhoff & Lynch, Boise, Idaho, for Owens Corning Fiberglass Corp.

Christopher Burke, Clemons, Cosho & Humphrey, Boise, Idaho, Donald J. Roberts, Gabriel A. Jackson, Winingham, Roberts, Rogie & Fama, San Francisco, Cal., for Eagle-Picher Industries, Inc.

Jeremiah A. Quane, Alan Hull, Jon Carter, Quane, Smith, Howard & Hull, Boise, Idaho, for Fibreboard Corp.

Louis F. Racine, Jr., Gary L. Cooper, Racine, Olson, Nye, Cooper & Budge, Chartered, Pocatello, Idaho, for Forty-Eight Insulations, Inc.

Allen B. Ellis, Jon M. Steele, Ellis, Brown, Sheils & Steele, Boise, Idaho, for Keene Corp.

Ron B. Rock, Robert C. Grisham, Moffatt, Thomas Barrett & Blanton, Chartered, Boise, Idaho, for Nicolet, Inc.

Craig L. Meadows, Wayne B. Slaughter, Edwin V. Apel, Jr., Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for GAF Corp.

Carl P. Burke, Charles L. Hay, Elam, Burke, Evans, Boyd & Koontz, Boise, Idaho, for Owens-Illinois, Inc.

Ronald P. Rainey, David E. Kerrick, Alexanderson, Davis, Rainey, Whitney & Kerrick, Caldwell, Idaho, for Pittsburgh Corning Corp.

Steven R. Matthews, Brady, McDaniel & Matthews, Chartered, Boise, Idaho, for Raymark Industries, Inc.

J. Frederick Mack, Langroise, Sullivan & Smylie, Boise, Idaho, for Standard Insulations, Inc.

## MEMORANDUM DECISION

CALLISTER, Chief Judge.

Before the Court is the joint motion for summary judgment of the defendants in the following five cases: *Meyer v. Armstrong World Industries, Inc.*, Civil No. 83–4057 (*Meyer I*) and 84–4081 (*Meyer II*); *Jenkins v. Armstrong World Industries, Inc.*, Civil No. 83–4055 (*Jenkins I*) and 84–4072 (*Jenkins II*); and *Belisle v. Armstrong World Industries, Inc.*, Civil No. 83–4056 (*Belisle*). Counsel presented oral argument on this matter on February 25, 1985, and the Court has reviewed the memoranda submitted and all other matters filed on this case.

These five cases involve asbestos-related injuries. All five involve similar facts and identical questions of law. In each case, the plaintiff, or deceased spouse of the plaintiff, was exposed to asbestos products during the course of his employment. Of the three plaintiffs, only one, Henry C. Meyer, is living.

Pursuant to this motion, the defendants filed a joint statement of facts to which plaintiffs have stipulated. In this statement, the defendants set out the last date on which each plaintiff or deceased spouse was exposed to asbestos and the date on which suit was filed in this Court, in the United States District Court for the Northern District of Texas, and the dates of transfers from Texas to this district: [1]

---

1. A brief procedural history of these five cases will follow below.

| Plaintiff | Last Exposure | Suit Filed/Transferred |
|-----------|---------------|------------------------|
| Meyer | February 1979 | Idaho: 3/21/83 |
| | | Texas: 10/12/83 (trans to Idaho 6/7/84) |
| Jenkins | September 1979 | Idaho: 3/21/83 |
| | | Texas: 10/13/83 (trans. to Idaho 5/24/84) |
| Belisle | 1945 | Idaho: 3/21/83 |
| | | Texas: 10/14/83 (trans. to Idaho still pending) |

From the statement of facts it appears that most or all of the deceased and/or plaintiffs are Idaho residents and that the last exposure to asbestos occurred in Idaho—with the exception of Mr. Belisle, whose last and only exposure was in the State of Washington.

Important to the joint motion before the Court is the procedural history of these five cases. Of these five cases, three, *Meyer I*, *Jenkins I* and *Belisle*, were originally filed in this Court on March 21, 1983. After answering the complaint, all of the defendants moved for summary judgment based on the running of the Idaho statute of limitations. Extensive discovery was done as to this issue by the parties. Before these motions could be ruled on, however, plaintiffs moved to voluntarily dismiss in all three cases. The defendants objected, requesting the Court to rule on their motions for summary judgment, or in the alternative, asking the Court to award them their costs and attorneys fees if voluntary dismissal were granted. In an order dated May 15, 1984, the Court granted the plaintiffs' motions *on the condition* that they pay the defendants' entire costs and expenses except for attorneys fees. Plaintiffs submitted a memorandum in opposition to this, claiming that because the defendants would be able to use much of the discovery product generated here in the Texas lawsuits which they soon planned to file based on the same causes of action, it would be unfair to charge the plaintiffs for those costs. As of this date, the plaintiffs have not paid the defendants' costs and the Court, as a result, has not dismissed the three cases. Thus, plaintiffs' motions to dismiss in these three cases remain in limbo, as do the defendants' motions for summary judgment.

During the above dispute over costs, the same three lawsuits were filed in the federal court for the Northern District of Texas by these same three plaintiffs. Several months later, the judge handling the *Meyer* case found this district, the District of Idaho, to be a more convenient forum and transferred it here under 28 U.S.C. § 1404(a), the forum non conveniens statute. In his order dated June 7, 1984, Judge William M. Taylor stated that the only connection the case had with Texas was that plaintiffs' counsel had his offices there.[2] Near the same time, Judge Robert M. Hill from the same Northern District of Texas transferred the *Jenkins* case to this district. In his order dated May 24, 1984, Judge Hill referred to the "absolute lack of connection between this forum [Texas] and the plaintiff." As yet, the *Belisle* case has not been transferred here.

To summarize, now pending before this Court are the three cases originally filed in this district: *Meyer I*, *Jenkins I* and *Belisle*. Also pending before this Court are two cases transferred here from the Northern District of Texas: *Meyer II* and *Jenkins II*, making a total of five cases before the Court on this motion.

## ANALYSIS

### I.

The Court turns first to the three cases originally filed and still pending in this district: *Meyer I*, *Jenkins I* and *Belisle*.

---

**2.** Another case, *Warnke v. Armstrong World Industries, Inc.,* Civil No. 84–1266 (Tex. Civil No. CA3–83–1675C), involving essentially identical issues, was also transferred here by Judge Taylor with a similar statement as to the absence of any Texas contacts.

These three cases are governed by this Court's recent ruling in *Adams v. Armstrong World Industries, Inc.,* 596 F.Supp. 1407 (D.Idaho 1984), in which the Court held, on basically identical facts, that the plaintiffs' case was barred by the running of the statute of limitations on the *deceased's* cause of action and the consequent failure of a condition precedent to the plaintiffs' wrongful death action. The Court will abide by its ruling in *Adams, supra,* and based on that decision will grant summary judgment as to *Meyer I, Jenkins I* and *Belisle,* the three original Idaho actions.[3] As to these three cases, the Court will grant costs to the defendants, but only those costs normally awarded to prevailing parties in this Court, rather than the expanded award of costs originally contemplated in the Court's conditional order dated May 15, 1984.

The Court turns next to the two cases transferred to this district from Texas, *Meyer II* and *Jenkins II. Meyer II* is a personal injury action; *Jenkins II* is a wrongful death action. The defendants argue that Idaho law, rather than Texas law, should govern these two cases. The defendants cite the landmark United States Supreme Court case of *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), which held that, generally speaking, when one federal court sitting in diversity transfers to another under 28 U.S.C. § 1404(a), the law of the state of the *transferor* court applies. The defendants argue that the rationale stated in *Van Dusen* was that of preventing § 1404(a) from becoming a means of forum shopping. In other words, the *Van Dusen* court asserted that parties, by using a § 1404(a) transfer

should not "get a change of law as a bonus for a change of venue." Defendants contend that the plaintiffs' tactics in filing first in Idaho, attempting to dismiss when they discovered Idaho's unfavorable statute of limitation, then filing identical actions in Texas—with the consequent transfer to Idaho—is nothing more than blatant forum shopping. Defendants claim that the plaintiffs are Idaho residents, the asbestos exposure occurred substantially in Idaho, the treating doctors and other witnesses are located in Idaho and Utah or elsewhere, but none of the above are located in Texas. Thus, defendants argue that *Van Dusen's* general rule does not apply in the present case.

In the alternative, defendants claim that even if this Court does look to Texas law, that state's choice of law rules would still mandate application of Idaho *substantive* law, though Texas *procedural* law would also apply. The defendants contend that although statutes of limitation are generally considered to be procedural, an exception exists where the limitations period is an "integral part of the statute creating the cause of action." Defendants assert that Idaho Code § 5–219(4) is an integral part of Idaho's Products Liability Act and is thus substantive, not procedural, and should be applied in this case.

On the other hand, plaintiffs contend that Texas law governs the two cases transferred here from the Northern District of Texas. Plaintiffs cite the *Van Dusen* case, *supra,* and argue that the rule of that case should apply here. The plaintiffs claim that the *Van Dusen* court contemplated that its ruling might occasionally

---

**3.** Only the first part of the *Adams* holding, i.e., that pertaining to the Idaho statute of limitations, Idaho Code § 5–219(4), applies to the *Meyer I* case since it is not a wrongful death action as are *Jenkins I* and *Belisle.* The Court notes that since its ruling in *Adams, supra,* the Idaho Supreme Court has reaffirmed its position that Idaho Code § 5–219(4) does not contain any discovery exception, except the two expressly mentioned in the statute. *Theriault v. A.H. Robins Co., Inc.,* 108 Idaho 303, 698 P.2d 365 (1985); *but see, Allen v. A.H. Robins Co., Inc.,* 752 F.2d 1365 (9th Cir.1985). In addition,

the Idaho Court of Appeals has issued a decision in close harmony with other statements this Court made in its *Adams* decision. In that decision, *Ogle v. De Sano,* 107 Idaho 872, 693 P.2d 1074 Ct.App.1984), the Court of Appeals concluded that § 5–219(4) contains no discovery rule and recognized, as did this Court in *Adams,* that the Idaho Supreme Court's decision in *Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1984), was a "court created, special exception to [§ 5–219(4)] for wrongful birth cases...." *Ogle, supra,* 693 P.2d at 1077, note 1.

afford a plaintiff with a more favorable choice of law through the deliberate choice of an inconvenient forum. The plaintiffs argue that they had the right to select any forum they desired so long as the defendants were amenable to service of process in that forum. They contend that Texas is one such forum. Therefore, the plaintiffs believe that the *Van Dusen* rule applies and that this Court must apply Texas law, the law of the state of the transferor court.

Plaintiffs go on to explain that under Texas choice of law rules, Idaho substantive law and Texas procedural law should govern this action. Plaintiffs contend that the limitations period in Idaho Code § 5–219(4) is merely a procedural rule and thus will be replaced by the Texas statute of limitations. Plaintiffs then show that under the Texas statute of limitations, Tex. Rev.Civ.Stat.Ann., art. 5526(4) (Vernon 1984)—which apparently contains a judicially created discovery rule—these plaintiffs' causes of action are not time-barred.

In light of the facts of these cases and the procedural history described previously, the Court has serious misgivings about the applicability of the *Van Dusen* rule to these two Texas transfer actions. The general rule stated in *Van Dusen*, is that in cases "where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." 376 U.S. at 639, 84 S.Ct. at 821. The *Van Dusen* Court, however, made no attempt to attempt to enunciate an all-inclusive rule applicable to every conceivable situation:

> [W]e do not and need not consider whether in all cases § 1404(a) would require

the application of the law of the transferor, as opposed to the transferee, state. We do not attempt to determine whether, for example, the same considerations would govern if a plaintiff sought transfer under 1404(a) or if it was contended that the transferor state would simply have dismissed the action on the ground of forum non conveniens.

*Id.* at 639–40, 84 S.Ct. at 821.

Similarly, a number of noted scholars have indicated that the *Van Dusen* rule should not apply where the plaintiff has intentionally selected an inconvenient forum, where the state courts of the transferor district would have dismissed the action based on forum non conveniens,[4] or where the state courts of the transferor district would not have personal jurisdiction over the defendant, or where the transfer was made on the plaintiff's motion. *See* R. WEINTRAUB, *Commentary on the Conflict of Laws* § 10.7D at pp. 585–87; E. SCOLES AND P. HAY, *Conflict of Laws* § 3.46 at pp. 125–27; and B. CURRIE, "Change of Venue and the Conflict of Law: A Retraction," 27 Chi.L.R. 341, 350–51 (1960).

■ The *Van Dusen* Court also made the following qualifying comment regarding its holding in that case:

> We do not suggest that application of transferor state law is free from constitutional limitations.

376 U.S. at 639, n. 41, 84 S.Ct. at 821, n. 41. This Court believes, and so rules, that where the state of the transferor district has insufficient contacts with the parties and with the occurrence giving rise to the litigation such that it cannot constitutionally apply its own law under the due process clause of the Fourteenth Amendment, the *Van Dusen* rule does not mandate application of the law of the transferor state.

---

**4.** At the hearing, the Court requested that counsel brief the status of the doctrine of forum non conveniens under Texas law. Texas does recognize the doctrine of forum non conveniens. *Couch v. Chevron International Oil Co.,* 672 S.W.2d 16, 18 (Tex.Ct.Civ.App.1984). The Texas Supreme Court, however, has expressly reserved decision as to the extent to which the doctrine is applicable under Tex.Rev.Civ.Stat.Ann., art. 4678 (Vernon 1982–83), Texas' wrongful death statute for causes of action arising in a foreign state or country. Thus, the Court is unable to say, with certainty, that a Texas state court would dismiss this action based on forum non conveniens.

**22**

Under a long line of United States Supreme Court decisions, it is now well-established that the choice of law of a state which has had no significant contact or significant aggregation of contacts is constitutionally invalid under the due process clause of the Fourteenth Amendment.[5] *Home Insurance Co. v. Dick,* 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930); *John Hancock Mutual Life Insurance Co. v. Yates,* 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936); *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).[6] The *Hague* case is the Supreme Court's most recent pronouncement in this area. Although the court was badly divided in that case, seven Justices were able to agree upon the following test:

> [F]or a state's substantive law to be selected in a constitutionally permissible manner, that state must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

449 U.S. at 312–13, 332, 336, 101 S.Ct. at 640, 650, 652.[7]

In *Hague,* the plaintiff's husband died of injuries suffered when the motorcycle on which he was a passenger was struck by an automobile. The accident occurred in Wisconsin. The operators of the two vehicles, and the deceased, were all residents of Wisconsin. The deceased and the plaintiff had resided, at the time of the accident, in Hager City, Wisconsin, which is located near the Wisconsin-Minnesota border. The deceased had been employed in Red Wing, Minnesota (located just a few miles from the deceased's residence in Wisconsin), and the deceased commuted daily from Wisconsin to his place of employment in Minnesota. After the accident, but prior to the commencement of any legal action, plaintiff moved to Minnesota. Subsequently, she married a Minnesota resident and established residence with her new husband in Minnesota. Plaintiff was also appointed, near the same time, as the personal representative of the deceased's estate in Minnesota.

Neither the operator of the motorcycle nor the operator of the automobile carried valid insurance. However, the deceased held a policy issued by defendant Allstate Insurance Co. covering three automobiles owned by the deceased and containing an uninsured motorist clause insuring him against loss incurred from accidents with uninsured motorists. The uninsured motorist coverage was limited to $15,000.00 for each automobile. Following her appointment as personal representative, plaintiff brought suit in Minnesota state district court seeking a declaration under Minnesota law that the $15,000.00 uninsured motorist coverage on *each* of her late husband's three automobiles could be "stacked" to provide total coverage of $45,-

---

5. The Court will limit its discussion to the due process clause although the full faith and credit clause is also arguably implicated. *See Allstate Insurance Co. v. Hague,* 449 U.S. 302, 308, n. 10, 101 S.Ct. 633, 637, n. 10, 66 L.Ed.2d 521 (1981).

6. It should be noted that the question of whether the choice of a state's law comports with due process is analytically distinct, though related, to the question of whether a state may constitutionally exercise personal jurisdiction over a defendant under the due process clause and the accompanying minimum contacts analysis. The choice of law question arises only after it is assumed or established that the defendant's contacts with the forum are sufficient to support personal jurisdiction. *Hague, supra,* 449 U.S. at 320, n. 3, 101 S.Ct. at 644, n. 3. Apparently, then, the due process test, for choice of law purposes, is a slightly more demanding one than the due process test for personal jurisdiction purposes.

7. Because the Court is interpreting federal constitutional law, it will not be bound by state law characterizations as to what is "substantive" and what is "procedural." The *Hague* court offered no guidance as to what standard should be used in making this characterization. If *Erie* standards are looked to, statutes of limitations are generally considered to be substantive. *See, e.g., Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); 19 C. WRIGHT, A. MILLER & E. COOPER, *Federal Practice and Procedure* § 4511 at p. 189, n. 67. Regardless, the Court views statutes of limitation in this case as substantive—which is in line with the modern trend of decisions. *See* discussion *infra* as to characterization of Idaho's statute of limitations.

000.00. Allstate defended on the ground that whether the three uninsured motorists coverages could be stacked should be determined by Wisconsin law, since the insurance policy was delivered in Wisconsin, the accident occurred in Wisconsin, and all persons involved were Wisconsin residents at the time of the accident.

The Minnesota District Court applied Minnesota law and allowed stacking of the insurance policies. The Minnesota Supreme Court affirmed. On certiorari, the four Justices in the plurality opinion, along with Justice Stevens, held that Minnesota had sufficient contacts or aggregation of contacts to constitutionally allow application of Minnesota law. The three dissenting Justices believed that the choice and application of Minnesota law was constitutionally prohibited under the due process clause.

In arriving at its decision, the Brennan plurality cited *Dick* and *Yates, supra,* as cases in which the choice of a particular state's law was invalidated as unconstitutional. In those cases the state whose law was chosen had only a single "insignificant contact with the *parties* and the *"occurrence or transaction* giving rise to the litigation."' 449 U.S. at 310-11, 101 S.Ct. at 638-39. The plurality also cited, by way of contrast, three other cases, *Alaska Packers Association v. Industrial Accident Commission,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); *Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947); and *Clay v. Sun Insurance Office, Limited,* 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964); in which the choice of law was pronounced constitutionally valid. In these cases there had been at least several important contacts between the state whose law was chosen and the parties or occurrence giving rise to the litigation.

On the spectrum of cases ranging from *Dick* and *Yates* on the one hand, to *Alaska Packers, Cardillo* and *Clay* on the other hand, the *Hague* plurality felt that the facts of that case fell onto the *Alaska Packers* side of the spectrum. The plurali-

ty listed three contacts, which, *in the aggregate,* were sufficient to validate the application and choice of Minnesota law. These three contacts, listed in the order of their apparent importance, were:

1. The deceased had been employed in Minnesota for fifteen years; in addition, he had commuted to work on a daily basis;

2. The defendant, Allstate, was licensed and doing business in Minnesota;

3. Plaintiff, the spouse of the deceased, became a resident of Minnesota prior to the commencement of litigation and was appointed personal representative of her former husband's estate by a Minnesota probate court.

The plurality was careful to note that these contacts were sufficient when viewed in the aggregate—it expressed no view as to whether any lesser combination of the three contacts would have sufficed to sustain the choice of Minnesota law. 449 U.S. at 320, n. 29, 101 S.Ct. at 644, n. 29.

 In the present case, only one of the three contacts listed by the *Hague* plurality supports the choice of Texas law. That lone contact is that the defendants are licensed to do business in Texas. No other contacts exist whatsoever. Plaintiffs' counsel, in response to the Court's direct question from the bench, stated that the defendants had no contacts with Texas. Judge Hill, in his transfer order previously referred to, said that the only contact the litigation had with Texas was that plaintiffs' counsel had offices there. Judge Taylor, in his transfer order, made a similar remark. Thus, it is clear that Texas has no contacts with the *transaction or occurrence* giving rise to this litigation and has only a single contact with one of the *parties,* the defendants, none with the plaintiffs.

This Court rules that the mere fact that the defendants do business in Texas is insufficient to constitutionally validate the choice of Texas law in this case. In *Yates, supra,* the mere fact of doing business in the forum state by an insurance company was insufficient. *Hague, supra,* 449 U.S.

at 338, n. 4, 101 S.Ct. at 653, n. 4 (Powell, J., dissenting). The Court agrees with Justice Powell's argument in the *Hague* case:

Second, the plurality finds it significant that the insured does business in the forum state. The state does have legitimate interest in regulating the practices of such an insurer. But this argument proves too much. The insurer here does business in all fifty states. The forum state has no interest in regulating that conduct of the insurer unrelated to property, persons, or contracts executed within the forum state.

449 U.S. at 338–39, 101 S.Ct. at 653–54 (Powell, J., dissenting). The same situation is present in this case. The defendant asbestos companies, or most of them, do business in most or all of the fifty states. Texas has no interest in regulating or imposing liability on conduct that is unrelated to property or persons located within the state. As the Court of Appeals for the Eighth Circuit stated:

When a state's law is applied to a transaction with which the state has no significant contact, it infringes upon the legitimate interests that other states may have in the transaction; this infringement is not reasonable—in a due process sense—within the context of our federal system of government.

*McCluney v. Jos. Schlitz Brewing Co.*, 649 F.2d 578 (8th Cir.1981), *aff'd* 454 U.S. 1071, 102 S.Ct. 624, 70 L.Ed.2d 607 (1981).[8]

In conclusion, the Court concludes that the choice of Texas law, under the facts of this case, would violate the due process clause of the Fourteenth Amendment and this Court is not bound, under *Van Dusen*, to apply the law of Texas, the state of the transferor court.

## II.

■ Even if the Court finds no constitutional barriers to the application of Texas law and follows the *Van Dusen* rule, summary judgment is still mandated. *Van Dusen, supra,* taken together with *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), dictate that this Court apply the law of Texas, including Texas choice of law rules. Under *Klaxon, supra,* a federal court sitting in diversity applies the choice of law rules of the state in which it sits. 313 U.S. at 496, 61 S.Ct. at 1021. Texas follows the "most significant relationship" approach of the RESTATEMENT (SECOND) OF CONFLICTS. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979). The parties agree that, under the most significant relationship test, Idaho substantive law and Texas procedural law govern in this case. The parties disagree, however, as to whether Idaho Code § 5–219(4), the relevant Idaho statute of limitations for wrongful death and personal injury actions, is procedural or substantive.

The traditional rule, which is followed by Texas courts, is that statutes of limitation are generally procedural. *See, e.g., Citibank National Association v. London*, 526 F.Supp. 793 (S.D.Tex.1981). That rule is subject to an equally well-established exception, which is stated in the leading Texas case of *California v. Copus*, 158 Tex. 196, 309 S.W.2d 227, 231 (1958):

The weight of authority favors the rule or exception to the foregoing general rule that where the statute creates a right and also incorporates a limitation upon the time within which the suit is to be brought, the limitation qualifies the right so that it becomes a part of the substantive law rather than the procedural, and that unless suit is brought within the time allowed by statute, no right of action can be maintained even though the law of the forum provides for a longer period of limitation.

---

**8.** In *McCluney, supra,* the Eighth Circuit held that the choice of Missouri law violated the due process clause; the contacts between the state of Missouri, the parties, and the transaction or occurrence giving rise to the litigation in that case were arguably much greater than those in the case at bar.

The *Copus* rule has been followed in numerous Texas state and federal court decisions. *See, e.g., Watson v. Glens Falls Insurance Co.,* 505 S.W.2d 793 (Tex.1974); *Whitley v. Hartford Accident and Indemnity Co.,* 532 F.Supp. 190 (N.D.Tex.1981).

At this point, because *Meyer II* is a personal injury action and *Jenkins II* a wrongful death action, the Court must analyze each case separately to determine whether § 5–219(4) is substantive or procedural. As to *Meyer,* the Idaho Products Liability Act, Idaho Code § 6–1401 *et seq.* expressly incorporates by reference the two-year limitations period contained in § 5–219(4). *See* § 6–1403(3). Although the Products Liability Act did not replace wholesale Idaho's existing products liability law; it did create a systematic statutory scheme covering all products liability actions in the state of Idaho. A key part of that statutory scheme is § 6–1403(3), which incorporates by reference § 5–219(4):

> *Statute of limitation.* No claim under this chapter may be brought more than two (2) years from the time the cause of action accrued as defined in § 5–219, Idaho Code.

Idaho Code § 6–1403(3) (1984 Supp.) Section 5–219(4) is an integral part of the Idaho Products Liability Act because that section defines "accrual" of causes of action under the Act. Thus, the Court believes that § 5–219(4) is substantive and controlling in this case.

As to *Jenkins II,* statutes of limitation on wrongful death causes of action are generally deemed to be substantive under Texas case law. *See, e.g., Gaston v. B.F. Walker, Inc.,* 400 F.2d 671 (5th Cir.1968) (interpreting Texas law). Although Idaho's wrongful death statute, Idaho Code § 5–311, does not contain a "built-in" statute of limitations, the Court believes there is sufficient indication that the legislature meant to limit not only the remedy but also the right created in § 5–311 by enacting, in the same year, § 5–219(4), which states:

> Within two (2) years: An action to recover damages for professional malpractice, or for an injury to the person, or for the

death of one caused by the wrongful act or neglect of another....

Idaho Code § 5–219(4). If the limitations period is "directed toward the right so specifically as to warrant saying that it qualifies the right," the limitation should be viewed as substantive. SCOLES & HAY, *supra,* at p. 61, and cases cited therein. That is clearly the case in §§ 5–311 and 5–219(4).

Further, the condition precedent rule discussed in this Court's *Adams* ruling, is part of the substantive law of Idaho and it dictates that in order to maintain a wrongful death cause of action, the deceased must have been able to maintain a valid cause of action as of the date of his death. In this case, Jenkins' personal injury action would have been time-barred as of the date of his death under the Court's analysis in the *Adams* case. In conclusion, the Court finds that § 5–219(4) is substantive as to both Meyers' personal injury action and Jenkins' wrongful death action.

Despite the above, the Court believes there is a stronger reason for applying Idaho's statute of limitations as opposed to that of Texas. In the first place, this Court disapproves of the notion that a transferee federal court must mindlessly apply the so-called procedural law of the state of the transferor court. The traditional rule, as developed in choice of law theory, was that a forum court should apply its own procedural law, while applying foreign substantive law to a cause of action arising in a foreign state. This traditional rule serves no purpose in the context of transfers under § 1404(a). The policy behind the traditional substantive/procedural dichotomy was to promote ease and efficiency in judicial administration on the part of the forum court by allowing it to apply its own procedural rules with which it was more familiar, even though it had to apply the substantive law of a foreign state. *See, e.g.,* RESTATEMENT (SECOND) OF CONFLICTS § 122 (1974) and comments; R. LEFLAR, American Conflicts Law § 121 at p. 239 (3d ed. 1977). This dichotomy, while criticized by many scholars and cases, arguably made some sense in purely state-to-

state choice of law situations, or where a federal court sitting in diversity was merely acting as an adjunct of the state court. Where, however, a transferee federal court is obliged, in parallel circumstances, to apply the procedural law of the transferor state, any possible advantage underlying the substantive/procedural dichotomy is lost. The effect of the substantive/procedural dichotomy—if the *Van Dusen* and *Klaxon* rules are carried out to their logical limits, is that a transferee federal court will rarely apply the procedural law of its own state—the diametric opposite of the policy underlying the traditional substantive/procedural distinction.

Second, the modern trend in choice of law analysis is to do away with completely the old substantive/procedural distinction. The leading case is *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412 (1973). *Heavner* is now being followed by an ever increasing number of courts and has received widespread scholarly acclaim. *See, e.g.,* LEFLAR, *supra,* at pp. 255–56; SCOLES & HAY, *supra,* at pp. 65–67; and authorities cited therein. Under the modern approach, a court will apply the particular choice of law theory (*e.g.,* most significant relationship, interest analysis, etc.) to the case as a whole or to each individual issue in the case, regardless of whether the issue traditionally would have been classified as substantive or procedural. The Ninth Circuit has adopted this approach on at least one occasion. *See Tomlin v. Boeing Co.,* 650 F.2d 1065 (9th Cir.1981), which also dealth with the question of which state's statute of limitations should apply. The *Tomlin* court cited with approval the following comment of Professor Leflar, a noted authority in the area of conflicts of law:

> There is no inherent reason why the choice between statutes of limitations should be handled any differently than other choice of law problems.

*Id.* at 1069, citing LEFLAR, *supra,* at p. 256.

There is much to be commended in this modern approach. The traditional substantive/procedural distinction is at best an artificial, overly-technical, and generally result-oriented method. As Professor Sedler has observed:

> The struggles of the courts to determine whether the locus has destroyed the right are amusing, even if the results are inconsistent and the reasoning at times most specious.

SEDLER, "The Erie Outcome Test as a Guide to Substance and Procedure in the Conflict of Laws," 37 N.Y.Univ.L.R. 813, 848 (1962).

If the Court were free to adopt this modern approach, it would find that the state of Idaho has the greatest interest in having its statute of limitations applied to the present case since all of the relevant contacts with this litigation exist in the states of Idaho and Washington, and none exist in Texas. *Klaxon, supra,* and its progeny, however, disallow such adventuring by district courts. Regardless, even under Texas choice of law, the Court finds that § 5–219(4) acts to bar the causes of action in *Jenkins II* and *Meyer II,* the two cases transferred to this district from the Northern District of Texas.